[No. 10851.  Department Two.  May 15, 1913.]

*In the Matter of the Petition of the* CITY OF BREMERTON.
THE CITY OF BREMERTON, *Respondent*, v. SOPHIA BREMER,
*as Executrix etc., Appellant.*[1]

EMINENT DOMAIN—BY CITY—STREETS.  A city has the right to condemn a street as an approach to a wharf which it was contemplating building on land it had acquired below the line of extreme low tide.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE.  It is not reversible error to permit a witness to give his opinion of the value of lands, based upon what he had been told were the rental values, where it was elsewhere proved that the rental values were within his estimates.

EVIDENCE—OPINION EVIDENCE—VALUES.  It is not reversible error to refuse to strike the testimony of a witness as to the value of land, which on cross-examination it appeared was based upon what he was willing to pay for it, where the witness had qualified as an expert and given his estimates on direct examination.

EMINENT DOMAIN—INSTRUCTIONS.  In a proceeding to condemn a street, it is not error to inform the jury as to the purpose for which the city desired the street.

Appeal from a judgment of the superior court for Kitsap county, Bell, J., entered April 22, 1912, in favor of the plaintiff, adjudging a public use and awarding damages in proceedings to condemn land for street purposes, after a trial before the court and a jury.  Affirmed.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp,* for appellant.

*J. W. Bryan,* for respondent.

FULLERTON, J.—On April 3, 1911, the city of Bremerton, by ordinance, provided for the condemnation and appropriation of a strip of land 70 feet in width and 350 feet in length, extending from the foot of Front street therein to the line of extreme low tide in Port Orchard Bay, the

[1]Reported in 132 Pac. 240.

stated purpose being to extend Front street from its then terminus down to the line of extreme low tide. The ordinance directed that condemnation proceedings be instituted to acquire title to the land required; and pursuant thereto, the city attorney of the city of Bremerton instituted proceedings for that purpose in the superior court. The petition set forth the purpose of the proceedings in the language of the ordinance, describing that purpose to be the extension of Front street, in the city of Bremerton, from its then terminus to extreme low tide. The title to the property was alleged to be vested in Mrs. Sophia Bremer, in her own separate right and as executrix of the estate of William Bremer, deceased. Mrs. Bremer filed an answer to the petition, in which she denied that the purpose of the proceeding was the extension of Front street; and in which she alleged affirmatively that the proceedings were not prosecuted in good faith; that the purpose and object of the same was the building of a dock or wharf thereon with approaches thereto; and that the city of Bremerton, being a city of the third class, was not empowered to condemn land for wharf or dock purposes. The city put in issue the affirmative allegation of the reply, and a trial was had, which resulted in a judgment finding that the use for which the land was sought to be condemned was for a public street, and that the city had the right to condemn the same. The question of the value of the property taken, and the damages caused by the taking to other property, was then submitted to a jury, which returned a verdict in favor of the owner for $5,000. Judgment was entered thereon, and this appeal followed.

The appellant first assigns that the court erred in adjudging that the use for which the property was sought to be taken is for the extension of a public street. She contends that the property is sought to be taken not for a street, but that a wharf or dock may be erected thereon. Abstracts from the reports of committees appointed by the city council of the city of Bremerton to consider the advisability of con-

structing a public dock, together with abstracts of the minutes of the meetings of the city council, were introduced in evidence to prove the contention, and to show that the city is not acting in good faith, but we do not think the evidence as a whole justifies the conclusion that the purpose of the city is other than it purports to be. Undoubtedly the city intends to build a wharf on land which it has acquired lying below the line of extreme low tide, and below the lands sought to be condemned, and that it desires to extend Front street that it may have an approach to the dock. We cannot, however, conceive of any legal objection to this proceeding. The city has a lawful right to erect public docks at street terminations leading into navigable waters, such as is contemplated here. This we held in *Chlopeck Fish Co. v. Seattle,* 64 Wash. 315, 117 Pac. 232, where we said:

"The appellants concede the right of the city to extend and improve its streets over tide lands, but contend that it has no authority to place any structure in the streets. They cite in support of this, *Globe Mill Co. v. Bellingham Bay Imp. Co.,* 10 Wash. 458, 38 Pac. 1112, where the court recognizes, *arguendo,* that both tide lands and intervening streets will ultimately be filled and become 'solid land.' This may be granted, but it seems far from holding that the terminus of a street may not be extended by a wharf or gridiron to make a practicable connection of solid land and navigable water. It is also true that in *West Seattle v. West Seattle Land & Imp. Co.,* 38 Wash. 359, 80 Pac. 549, the maintenance of a ferry slip in the street by private persons was enjoined as a nuisance on complaint of the city, but that is hardly authority for the contention that the city cannot lawfully maintain a slip and wharf at the terminus of a street, extending the same into navigable water for the use and convenience of the general public. It is true, also, that neither the city nor any one else can lawfully erect a standpipe, or a steam engine, or an electric light plant, or a water tank, or a city hall, or a dumping board, or any other structure of like character in the streets, as held by other authorities cited by appellants; but there is a wide difference between these things and the construction of a wharf by the

city at a street termination, leading into navigable water giving public access thereto, and in aid of general traffic between land and water. This is not only not inconsistent with the use of the street as a public highway, but is actually in aid of such use."

It must follow, we think, that it may condemn a way to reach such dock.

The conclusion reached on the foregoing branch of the case renders it unnecessary to discuss the second question suggested; namely, whether or not a city of the third class has power to condemn land for wharfage purposes. Certain questions however are suggested which are thought to require a new trial, and these we will notice briefly.

At the trial of the case before the jury, one Randall was permitted to testify as to the amount of damages that would be suffered by the owner by the taking of the property sought to be condemned. In his cross-examination the following appears:

"Q. On what do you base your value of $3,000 for the piece described on the plat? A. On the average rental of the property adjacent thereon. Q. Now, is there any of this tide land—there is some tide land rented, is there not? A. Yes, I believe so. Q. Do you know what the rental value of that property is? A. It varies from ten dollars to thirty dollars a month, I think. Q. Do you know? A. I have not seen any of the leases or rentals. This is hearsay. Q. Is your value of $3,000 based on what you have heard of the rental of the adjacent property? A. Yes, sir."

After these answers had been made, the appellant moved to strike the testimony of the witness, which motion the court denied. This is thought reversible error, but we think the ruling correct. Elsewhere in the record it appeared that the rental values of the property described were within the estimates made by the witness; and if his evidence was incompetent standing alone, it was made competent by these additional proofs.

Another witness testified on cross-examination that his

estimates of the value of the property taken were based on the sum he was willing to pay for the property. The court refused to strike his testimony, but we think no reversible error was committed thereby. The witness qualified himself in his direct examination and gave his estimates of the value of the property. The effect of his answers on cross-examination was rather to destroy the probative force of his testimony than to render it inadmissible.

The court gave the following instruction to the jury:

"You are instructed that the city has the right to take the land described in the petition for the purpose mentioned therein, namely, the building of a street or an approach to a wharf or dock to be built in front of the harbor area in front of the said tract."

This instruction is unobjectionable. Both the ostensible and real purpose of the proceeding was to provide a street for a wharf which the city proposed building, and no harm could come by informing the jury of that fact.

There is no reversible error in the record, and the judgment will stand affirmed.

CROW, C. J., MORRIS, ELLIS, and MAIN, JJ., concur.