STATE, EX REL. CITY OF LINCOLN, RELATOR, V. L. B. JOHNSON, AUDITOR OF PUBLIC ACCOUNTS, RESPONDENT.

FILED JUNE 27, 1928. No. 26607.

*C. Petrus Peterson* and *Charles R. Wilke*, for relator.

*O. S. Spillman, Attorney General*, for respondent.

Heard before GOSS, C. J., ROSE, DEAN and THOMPSON, JJ., and CHASE, REDICK and WHEELER, District Judges.

ROSE, J.

This is an original application for mandamus to compel the auditor of public accounts to register and certify municipal bonds in the sum of $100,000 issued by the city of Lincoln for the purpose of establishing and equipping an aviation field for aerial traffic. The proposition to authorize the bonds was submitted to the voters of the city at a

state-wide primary April 10, 1928—a general election within the meaning of the "Home Rule Charter." *State v. Marsh,* 107 Neb. 607. There were 6,330 votes for and 6,173 against the bonds. One ground on which the auditor declined to register them was that the bond proposition submitted to the electors did not receive 60 per cent. of the total vote as required by the statute relating to the issuance of such bonds in cities of different classes. Comp. St. 1922, sec. 4607. The city contends that the statute cited does not control the city of Lincoln, which is governed by a Home Rule Charter containing provisions for the voting and issuing of municipal bonds for "public service property" and for "public utilities" upon a majority vote of the electors. Lincoln Home Rule Charter, art. 2, sec. 1; art. 8, sec. 11. If the local Home Rule Charter of Lincoln controls, instead of the statute relating to cities of different classes, the bonds in controversy were authorized by the majority vote at the general election April 10, 1928. Discussing the power of the city of Lincoln under its Home Rule Charter this court said:

"A city may enact and put into such charter any provisions for its government that it deems proper, so long as they do not run contrary to the Constitution or any general statute." *Schroeder v. Zehrung,* 108 Neb. 573.

In considering the constitutional power of a city to frame a charter for its own government, it was held in a later case:

"The purpose of the constitutional provision is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore, as to such matters general laws applicable to cities yield to the charter." *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51.

The statute requiring a vote of 60 per cent. of the electors to carry a proposition to issue bonds for the purpose of acquiring and equipping a municipal aviation field applies to metropolitan cities and to cities of the first and the second classes. It does not apply alike to every part of the state,

but is legislation confined to municipal affairs in cities of three classes and does not prevail over conflicting provisions in a Home Rule Charter. In authorizing such bonds upon a majority vote, the Home Rule Charter deals with municipal affairs alone and under the authorities cited makes the statute requiring more than a majority vote inapplicable to the city of Lincoln. In this particular the auditor's position, though taken in good faith, is untenable.

The auditor refused to approve the bonds on the further ground that an equipped aviation field is not a "public service property" or a "public utility" within the meaning of the Home Rule Charter, an "aviation field" not being specifically enumerated in the provisions authorizing the voting and the issuing of municipal bonds. This position seems also to be untenable. The city of Lincoln has power—

"To acquire, maintain and operate public service property and to redeem such property from prior incumbrance in order to protect or preserve the interest of the city therein, and to exercise such other and further powers as may be necessary or incident to the powers conferred upon such city." Lincoln Home Rule Charter, art. 2, sec. 7.

As already stated, another provision authorizes municipal bonds for "public utilities" upon a majority vote of the electors.

In a sense the Home Rule Charter is the Constitution of the city. It is a frame of municipal government and is intended to be more permanent in its nature than an ordinary statute. In general features it is in a form to meet changing conditions as they arise. An equipped aviation field in or near the city is a means of making aerial service available to passengers. The service includes the transportation of mail and freight. The field is furnished for a public purpose for which taxes may be imposed in the exercise of governmental power. In this view of the question raised by the auditor, an equipped municipal aviation field is both a "public service property" and a

"public utility" within the meaning of the Home Rule Charter which authorizes municipal bonds upon a majority vote.

WRIT ALLOWED.