[No. 21902.   Department Two.   December 10, 1929.]

THE STATE OF WASHINGTON, *on the Relation of Philo Howard, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

*Frank Oleson, Alfred C. Oleson,* and *Frank A. Steele,* for appellant.

*Thomas J. L. Kennedy* and *Arthur Schramm,* for respondents.

MAIN, J.—This action was brought to compel the city of Seattle to continue to furnish street car service upon a particular street for a distance of two blocks, or about 1,320 feet. The cause was tried to the court, without a jury, and resulted in a judgment dismissing the application, from which the relator appeals.

The facts essential to be stated are these: Prior to the year 1919, the Puget Sound Traction, Light & Power Company owned and operated, under a franchise from the city of Seattle, a street railway system in that city. During the year mentioned, the city acquired the entire system and took it free and clear from

[1] Reported in 282 Pac. 829.

all franchise obligations of the prior owner. Connecting with one of the principal lines of the system, was a spur line, for a distance of two blocks or about a quarter of a mile, upon which was operated what is called a shuttle service. The operation of this service was being made at a material loss. In December, 1928, the superintendent of public utilities, the official in charge of the street railway system, announced that the service upon the street above mentioned would be discontinued. Thereupon this action was brought to compel the resumption and the continuance of the service. Subsequently and before the trial, the city by ordinance authorized the abandonment of the service.

The question is whether the city had the power to do this. The city's power to acquire and operate the system, together with the measure of its authority with respect thereto, is found in Rem. Comp. Stat., § 9488, wherein it is provided that

"Any incorporated city or town within the state be, and hereby is, authorized . . . to construct, condemn and purchase, purchase, acquire, add to, maintain, operate or lease cable, electric and other railways within the limits of such city or town for the transportation of freight, and passengers above or underneath the ground, with full authority to regulate and control the use and operation thereof . . ."

It will be noticed that this statute gives to the city full power and authority to regulate and control the use and operation of the street car system. There is nothing in the statute which requires the city to furnish service upon all parts of the system which was taken over by it.

In *State ex rel. Grinsfelder v. Spokane Street Railway Co.*, 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515, the street car system of the city of Spokane was owned and operated by a private corporation, and not by the city, under a franchise from

the city. It extended one of its lines beyond the city limits and subsequently this territory became a part of the city. It continued to operate the line, without acquiring a franchise therefor, and subsequently desired to abandon it, and it was held that this could not be done. It was there said:

"We conclude that a corporation of the nature of appellant, receiving its franchises from the state and entering upon the enjoyment of them, cannot cease to perform the functions which were the consideration for the grant of such franchises without the consent of the granting power. The question of the public convenience is one which appeals to the discretion of the court."

In the course of the opinion, the situation was likened to the opening of a highway or ferry with the right of collecting tolls for the use thereof, which it was said was affected with a public interest. In this connection, it is observed:

"The opening of a highway or ferry, and the common carriage of persons or property over them, was at common law a franchise and a matter of governmental concern. It was a part of the subjects in immediate possession of the sovereign power, and to exercise which demanded a special grant or charter from the sovereign. Such avocations, in their nature and history, are unlike the private avocations of milling, hotel keeping and traffic, which all may be pursued at pleasure, unless restrained by the exercise of police power. Judge Kent says, in vol. 3, Commentaries, p. 458, that there are certain franchises which are understood to be royal privileges in the hands of a subject. The right to set up a ferry or road, and the taking of tolls, is one of them, and in this the public has an interest."

In *Woody v. Port of Seattle*, 118 Wash. 163, 203 Pac. 59, it was held that the port of Seattle, being a public corporation, could abandon the operation of a ferry which it found unprofitable, because the port was not

subject to the limitations of a private corporation which holds a ferry franchise. It was there said:

"In our opinion, a public corporation created by law to exercise governmental functions is in a different position from a private corporation, even though the latter be vested with certain public privileges and corresponding duties.

" 'It is not unusual for the legislature to make to a municipal corporation a more or less extensive grant respecting ferries and ferry franchises. Such a grant is not, unless otherwise expressed, a compact which cannot be impaired, but in the nature of a public law, subject to be repealed or changed, as the public interests may demand.' Dillon, Municipal Corporations (5th ed.), vol. 1, § 275.

"In the case of the public corporation, there is no element of profit to its shareholders. Every detail of its operation can be reviewed by the people and corrected, if desired, by the election of officers for that purpose, or by the act of the legislature, if it sees proper. We think the courts should not interfere with the discretion of the officers of this public corporation as exercised in this instance under the facts of this case."

It is argued by the appellant that, if the judgment is not reversed, the court will have one rule for public utilities when privately owned and another when owned publicly or by municipal corporations. In the *Woody* case, it was expressly stated that a public corporation was in a "different position from a private corporation" with respect to the abandonment of service by a public utility. We see no material distinction between the present case and that case.

Much reliance is placed by the appellant upon the *Grinsfelder* case, above cited, but that case, as already appears, had to do with the right of a private corporation acting under a franchise to abandon part of the service which it had been furnishing, and is not applicable to the present situation.

As pointed out, the city of Seattle took the street car system free from any of the franchise obligations of the prior owner. If the appellant's position were sustained, it would mean that the city could not, at any time or under any circumstances, abandon any part of its system, if such abandonment would be a material inconvenience to the patrons of that portion of the system, even though operated at a loss. If the system were owned and operated by a private corporation, then the question of whether it could abandon any portion of its service would be a matter for the state department of public works to determine.

There is nothing in this case to show that the city was acting arbitrarily or capriciously, and we express no opinion upon the question as to what the result would be if the city were so acting.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.