## MOORE v. GORDON et al.

### No. 3275.

Court of Civil Appeals of Texas. Beaumont.

Nov. 8, 1938.

Rehearing Denied Dec. 7, 1938.

K. W. Stephenson and E. L. Reid, both of Orange, for appellant.

Gordon, Lawhon, Sharfstein & Bell, of Beaumont, and Monroe Chapman, of Orange, for appellees.

O'QUINN, Justice.

This was a suit by appellant Moore against appellee Gordon for specific performance of a certain contract entered into between Moore as first party and Gordon as second party, and praying in the alter-

native for damages in the event he should not be entitled to have the contract specifically performed.

The Orange National Bank was made a party defendant, it being alleged that said bank was designated as the escrow agent in the contract which appellant was seeking to have specifically performed.

We shall refer to the parties, Moore as plaintiff, and Gordon as defendant, that being their attitude in the trial court.

The following statement of the nature and result of the suit is taken from appellant's brief, which appellee admits is correct:

"On the 10th day of February, 1937, R. A. Moore filed suit in the district court of Orange County against Julius M. Gordon for specific performance of a certain contract entered into by and between himself as party of the first part, and Julius M. Gordon of Jefferson County, as party of the second part; and praying in the alternative for damages in the event he should not be entitled to have the contract specifically performed."

"The plaintiff alleged in his petition that he agreed to acquire the title to a 1/24th royalty interest in a tract of land situated in Jefferson County, and known as the City of Beaumont Airport property, comprising 275.44 acres; and that he executed a deed thereto in favor of Julius M. Gordon with the understanding that said deed should be placed in the Orange National Bank in escrow to await the acquisition of title by him. That the said Julius M. Gordon issued his check evidencing the amount that he was to pay for said royalty interest, being $16,772.00, and it was agreed that said check and said deed were to be placed in the bank, and that when plaintiff should purchase the royalty interest and deliver a good and marketable title thereto, then the said bank should deliver the deed to the said Gordon and the check to the plaintiff."

"The plaintiff alleged that he fulfilled said contract in all respects, and that the defendant failed and refused to comply therewith, and did notify said bank not to deliver to plaintiff the check."

"The plaintiff prayed for certain alternative relief upon the ground that if he should not be entitled to have the contract specifically performed, then he was entitled to recover damages in the amount of $16,772.00. That he would not have purchased the property had it not been for the contract which he relied upon. That after acquiring said royalty interest, it ceased to have any market value, and that because the said Gordon had repudiated the contract and breached same, the plaintiff sustained damages in said amount."

"The defendant, Julius M. Gordon, answered, pleading a general demurrer, certain special exceptions, a general denial, and certain defensive pleas were presented as follows:

"(a) He alleged that on or about November 20, 1935, plaintiff delivered to defendant's attorneys an abstract of title, which said abstract did not, according to the opinion of the defendant and his attorneys, reflect a good and merchantable title to the said mineral interest. That the plaintiff was so advised, and thereafter on December 14, 1935, the plaintiff's agent called upon the defendant's attorneys for the abstract, and that by reason of the delivery thereof, and by reason of the fact that said contract did not authorize the correction of the title, and no specific time was agreed upon for such purpose, the said agreement was thereby terminated."

"(b) That the said R. A. Moore did not comply with said contract and deliver a good and marketable title to said property as agreed upon. That the said property involved was, at the time said contract was made, considered to be valuable, and time was of the essence, and that due to the delay and negligence on the part of the said R. A. Moore, the title was rejected and the contract was in all respects terminated."

"(c) That the royalty interest which the said R. A. Moore is alleged to have acquired, comprised a part of the property known as the Beaumont Airport, and that the City of Beaumont was without authority to make disposition thereof, it being dedicated for such public use, and that the purported sale of said mineral interest by the City of Beaumont to R. A. Moore was, for said reason, invalid and of no effect; and that the defendant was not duty bound to point out to plaintiff the fact that the said property was acquired, dedicated, used and occupied by the City of Beaumont as an Airport; and that because of such use, occupancy and ownership, an inherent defect existed in the purported title of the plaintiff to said mineral interest, and that the plaintiff should be estopped to assert to the contrary."

"(d) That on or about the 28th day of March, 1935, the City of Beaumont exe-

cuted and delivered to one Joseph P. Landry of Jefferson County a mineral lease upon the said property known as the Beaumont Airport property, and that said lease was to remain in effect for a period of five years, and gave the lessee the sole, exclusive power and control of the exploration and production of minerals from and upon said Municipal Airport, and to divert the purposes for which said Airport was dedicated and to be used, and that on the 19th day of October, 1935, said lease was being held by the said Landry, and that any acquired by plaintiff was subject thereto, and that plaintiff's title, if any, was rendered objectionable and unmarketable by virtue thereof."

"(e) That the said contract sought to be specifically performed by the plaintiff should be in all things cancelled, set aside and held for naught, and that the Orange National Bank should deliver the escrow documents into court, and that the court should thereupon deliver the same to the parties entitled thereto."

"The plaintiff filed a supplemental petition, pleading as follows: A general demurrer, certain special exceptions, and a general denial. The plaintiff specially denied that time was of essence in the performance of the contract, alleging that it was well known by and between the parties that the plaintiff did not own the royalty interest at the time the contract was made, but was to acquire same, and that it would take time to do so, and to procure abstracts, have the title examined, etc., as provided in the contract. That the said royalty interest was believed by each of the parties to be valuable, and that the defendant, Gordon, desired to purchase the same to hold as an investment. That while it was known by and between the parties that it would take time to purchase said property and to procure abstracts and to have the title examined, yet the said contract was silent as to time of performance. That the plaintiff was by said contract entitled to such time as might be required by him, acting in good faith, to acquire said property, furnish abstracts thereto, etc., but plaintiff alleged that if he was not entitled to such rights under said contract, then the same is ambiguous and does not clearly state the full intention and agreement of the parties thereto, and that the intention and agreement is and was as alleged by plaintiff. That the plaintiff acted diligently in procuring said deed and in the performance of said contract, and acted diligently in procuring abstracts of title and delivering same to the defendant or his agent."

"The plaintiff alleged that the defendant, Gordon, and his agents had written letters, and so acted in the premises that he should be estopped to assert that time was of essence, and/or that the plaintiff was not authorized to cure defects, if any, in plaintiff's title after the delivery of the first abstract. That by virtue of the acts and conduct of the defendant, Gordon, and his agents, the said defendant waived time for performance by the plaintiff and waived any right, if any, he had to terminate said contract when the first abstract was delivered to defendant's agents; and said defendant should be estopped to claim that plaintiff did not perform said contract for said reasons presented by defendant."

"That the defendant Gordon had known that the plaintiff was seeking to purchase a 1/16th royalty interest from the City of Beaumont, and that said royalty interest was to be a part of the minerals in and under and that might be produced from the said Airport property. That plaintiff would not have incurred such obligation had the contract not been made, and had he not relied thereon, and that it would be inequitable and unjust to permit the defendant, Gordon, to deny liability under the terms and provisions of the contract and to assert that the City of Beaumont did not have authority to convey said royalty interest to plaintiff".

"That the defendant Gordon refused to perform said contract on the ground that the City of Beaumont could not make a valid conveyance of said royalty interest because the property involved had been dedicated as a Municipal Airport. That under such circumstances that it would be useless and vain to have cured any defects, if any, in plaintiff's title, or to bring said abstracts up to date, or a later date than that shown by the last certificate thereto. That had it not been for the fact that the defendant refused to perform said contract for said reason, plaintiff could have and would have corrected any defects that might have existed in his title, and could have and would have procured abstracts and had the same brought up to date. That by virtue of the conduct of the defendant, he is now estopped to urge any other defense to plaintiff's title, or to present other evidence to show defects, if any, in said title, than the objection made in regard to the City of Beaumont not having authority

to make a valid conveyance of said mineral interest."

"That the plaintiff especially denied that the City of Beaumont was without authority to execute a valid royalty deed as it did do, and/or that said deed was void and did not pass title to said property therein described."

"The defendant, Julius M. Gordon, answered the plaintiff's original supplemental petition, presenting a general demurrer, certain special exceptions, a general denial, and alleged that all negotiations leading up to the execution of the contract made between the parties were consummated by the execution thereof, and that said contract contained the full agreement; that the said contract did not provide that the plaintiff should have time to correct defects, if any, in his title, nor for the withdrawal of abstracts and re-submission thereof to defendant or his attorneys over any specified period of time. That time was of the essence, and that said contract was breached and terminated by plaintiff because of the unexcused delay prior to and on March 5, 1936; that all objections of the title by the defendant Gordon were made in good faith and in compliance to said contract. That the contract in question was dated October 19, 1935. That the plaintiff alleged in his pleadings that he accepted deed from the City of Beaumont on the 17th day of October, 1935. That all negotiations between the plaintiff and the City of Beaumont were had without the presence of said defendant, Julius M. Gordon, and that the latter did not participate therein or agree thereto; and that said agreement was concluded between plaintiff and the City of Beaumont prior to October 19, 1935, and that by reason thereof, such purported sale to defendant did not enter into same or have anything to do therewith."

The Orange National Bank, as defendant, filed its original answer, admitting that it was named escrow agent in said agreement, and attempted to act as such, and further denied that it had failed to comply with said contract, but was willing to obey the same under the orders and direction of the court.

The case was tried to the court without a jury, and judgment rendered that plaintiff take nothing. The Orange National Bank having tendered into court the royalty deed and check deposited with it in escrow, was dismissed with its costs, and the Clerk of the court ordered to deliver to plaintiff the royalty deed, and to defendant his check, and the judgment decreed that the contract for the sale of the royalty be annulled and held for naught. This appeal is from that judgment.

■ The contract of sale obligated plaintiff to furnish good and marketable title to the property to be conveyed. The abstract furnished, and the undisputed facts show, and the court found that the royalty interest in question was in 275.44 acres of land known as the City of Beaumont Airport. The land—275.44 acres—for this airport was bought and improved with funds derived from a bond issue of one hundred thousand dollars voted by the citizens of the City of Beaumont for such purpose. The Airport after the land was bought was improved and equipped for airport purposes, and exclusively dedicated for such purpose and has ever since been constantly used as such. Further, it is a matter of common knowledge that very recently another bond issue was voted by the people of Beaumont, the proceeds to be used in enlarging and better equipping the airport to bring it in the class of the best airports in the country, this to meet the constantly growing demands for better equipment and larger use of same.

■ The abstract, and, indeed, the contract of sale itself, showing that the royalty interest involved a perpetual interest in the whole of the 275.44 acres comprising the City of Beaumont Airport, the title to the property proposed to be conveyed to defendant for a purpose and use wholly inconsistent with the purpose and intent for which it was acquired and dedicated, was refused as not a good and marketable title, by defendant on the opinion and advice of his attorney. If this objection to the title was well taken, then, under the undisputed facts, plaintiff could not cure same, and the contract was not enforcible.

[3] Article 1269h, Vernon's Ann.Civ. St., authorizes incorporated cities to acquire land for the purpose of erecting, equipping, maintaining and operating an Airport for the use of the public. The airport here in question was so acquired, constructed and dedicated to the public use, and controlled and maintained and operated by the City of Beaumont, under the mandate of the citizens and tax payers of the city, in a bond election for that purpose. An Airport, within the meaning of the law, includes all lands, buildings,

structures or other improvements necessary or convenient in the establishment and operation of an airport. In this case the entire 275.44 acres of land was purchased, and extensive improvements were erected thereon for the purpose and use as an airport in keeping with the demands, needs and accommodation of the general public in the general sense for which airports of the first class are used.

■ The property having been acquired, improved and dedicated to public use as an airport, so long as the City of Beaumont continued to use same as an airport, and the same was not absolutely abandoned, the City of Beaumont could not lease or sell same for a different purpose or use inconsistent to that of the original dedication—airport purposes. We think it is well settled that when land has been lawfully dedicated to a public use, and is being used as such, as here, the city has no authority to appropriate it for a different use entirely inconsistent with the use originally intended. City of Fort Worth v. Burnett, Tex.Sup., 114 S.W.2d 220; City of Beaumont v. Matthew Cartwright Land & Improvement Co., Tex. Civ.App., 224 S.W. 589, writ refused. Clement v. City of Paris, 107 Tex. 200, 175 S.W. 672; Acuff v. Fort Worth & D. S. P. R. R. Co., Tex.Civ.App., 40 S.W.2d 189; Gillean v. City of Frost, 25 Tex.Civ. App. 371, 61 S.W. 345; Owens v. Jackson, Tex.Civ.App., 35 S.W.2d 186; 18 C.J. Sec. 167, p. 127.

That the use of the property for oil purposes, that is the drilling of wells and the production of oil, would very much impair if not entirely destroy the use of same for airport purposes, cannot be questioned. Derricks for drilling would be erected, all the possession of the land and activities necessary for the development of the land for oil would occur, and if oil was found, then the building of oil tanks on the land and the laying of pipe lines and the maintenance of the oil field indefinitely would follow. This would all be directly antagonistic to and inconsistent with the purpose for which the people of the city voted the bonds and improved, dedicated and used the property. Under the well settled law this could not be done.

Plaintiff cites us to Williams v. Shamrock Oil & Gas Company, 128 Tex. 146, 95 S.W.2d 1292, 107 A.L.R. 269, as sustaining his contention. It is not believed that under the facts there involved it has any application to the instant case. There

the question of municipally owned property purchased for and dedicated to a specific use was in no way involved.

■ He also cites us to the case of Christopher v. City of El Paso, Tex.Civ. App., 98 S.W.2d 394, which he says "settles the question relating to the right of a city to lease a municipal airport". The supreme court dismissed an application for a writ of error. As we understand the effect of dismissing an application for writ of error, it is that the supreme court approves the result reached by the Court of Civil Appeals, but not the reasons assigned. We have carefully considered the Christopher Case, and in our opinion neither the facts there involved nor the holding of the court on the questions before it have application here. There the City of El Paso owned an airport and operated same with A. E. Johnson as manager. The city entered into an agreement with Johnson relative to running the airport. After the making of this contract, there was an exhibition held at the airport consisting of stunt flying; parachute jumping; demonstration of a student taking a course in flying; and the riding of a motorcycle through a burning fence. After the motorcycle had passed through the burning fence, it ran into Ardell Christopher, a thirteen year old boy, who was standing near one of the hangars with his father, and he was severely injured. The father brought suit against the City of El Paso for damages. Among other defenses, the city denied that it was operating the airport, and alleged that it had leased the airport to Johnson, who was at the time in charge of and operating same. This was denied by Christopher, who replied that if such lease had been attempted it was without compliance with the provisions of the charter of the City of El Paso and the laws of the state, and therefore of no force. Johnson was made a party defendant by the city. He answered by general demurrer and general denial. The case was submitted to a jury upon special issues which were answered, but on motion the court rendered judgment non obstante veredicto in favor of the city and discharged Johnson. On appeal by Christopher, this judgment was affirmed by the Court of Civil Appeals. In the course of its opinion, the court said [page 399]: "Upon the question of agency appellants take the position that under article 1269h (Vernon's Ann.Civ.St.), and section 71 of the City Charter, the city

was bound to retain control and management of the airport and to perform the duties imposed by the statute. While it is true that both the statute and charter provide that the airport shall be under the management and control of the governing body of the city and that the city shall have the management and control of the property belonging to it, we find nothing in either the statute or the charter which would in any way prohibit the leasing of the property acquired for airport purposes, and it is our opinion that the cited provisions can have no bearing upon the question involved."

The Mayor of El Paso testified that "when the city because of the depression found that it would be unable to continue the operation of the airport, Johnson (who had been managing the airport for the city) agreed to operate it for what he could get out of it; that the rating of the airport was changed in order that fewer lights could be used; and that Johnson has paid all the expenses of the airport since the lease." So it appears without dispute that the lease was for the purpose of continuing the operation of the airport as an airport, the use for which it had been acquired and dedicated, not for an inconsistent use. In the instant case the sale of the royalty interest was for a wholly inconsistent use, for the royalty interest contemplated that the property (275.44 acres) would be developed and used for oil production—the royalty interest could not be of value to appellant otherwise. The undisputed evidence shows that Johnson continued to use the airport as such, carrying passengers, keeping the property in usable condition, carrying out the rules governing the airport to comply with the Rules of the Department of Commerce of the Federal Government. That case did not involve, and the appellate court did not determine, the lease question under facts similar to the instant case. As we read the opinion it does not hold that the airport could be leased generally, but for airport purposes, based, we think, on the fact that the city did not lease the airport for a use inconsistent with the original use and dedication, but merely to continue the operation of the property as an airport. To hold otherwise would be against the well settled and universally recognized rule that land that has been acquired for a specific use and dedicated to that use, so long as it is so used, the owner of the fee can not lease or sell same for

an inconsistent purpose that would destroy or interfere with the use to which it had been dedicated.

What we have said determines the appeal and renders all other assignments immaterial. The judgment should be affirmed, and it is so ordered. Affirmed.