PRICE et al. v. STORMS et al.

No. 30814.   Oct. 6, 1942.

Rehearing Denied Nov. 10, 1942.

*130 P. 2d 523.*

Stephenson & Stephenson, of Okemah, for plaintiffs in error.

J. Walter Long, Jr., of Okemah, for defendants in error.

RILEY, J. This is an appeal from a decree denying injunction against the sale of bonds of the town of Okemah proposed to be sold for funds with which to acquire land upon which to locate a municipal airport to be owned exclusively by the town of Okemah. The bond issue was authorized at an election held for that purpose on July 7, 1941.

Plaintiffs in error, plaintiffs below, property taxpayers of the town of Okemah, assail the validity of the bonds for several reasons: Nonincorporation of the town of Okemah; that the ordinance providing for said election and issuance of bonds was not signed nor attested by the town clerk under the town seal until after the election was held; irregularities in holding said election in that, it was alleged, in some instances the persons designated as election officials did not serve, but that other persons not qualified did so serve; that persons who were not property taxpaying electors were allowed to vote; that prior to the election the town trustees represented to the citizens and voters that the bonds, if authorized, would not be sold unless and until a training school for the training of pilots for the armed forces of the United States was secured for the town of Okemah; that such training school had not been secured and that such acts and representations made by the members of the town board were fraudulent; irregularities in the proceedings leading up to said election were alleged, wherein it was pleaded that the ordinance involved was adopted at a special meeting of the board of trustees, but that there was no notice or call made for such special meeting.

A trial upon the issues resulted in the decree denying the injunction. Plaintiffs appeal.

No proof is recorded on the question of the corporate existence of the town of Okemah. Nor is there evidence on the question of alleged disqualification of the election officials. None to sustain the alleged disqualification of persons who voted at the election.

There was some parol evidence tending to show that there was no request for the call of the special meeting and no call issued. But plaintiffs rely upon "the transcript of the proceedings of the board leading up to the issuance of the bonds." The transcript was introduced in evidence and does appear in the case-made though somewhat irregular in the matter of numbering pages in the case-made. Some parts of the transcript show the pages of certain instruments on pages numbered in the reverse order. This is clearly negligence of the person who prepared the case-made, but when properly arranged the transcript shows complete and regular compliance with all the requirements of law. All the proceedings set forth in the transcript are properly signed and attested by the town clerk and are under the seal of the town clerk and are

certified as true and correct. This record was not successfully impeached.

Plaintiffs wholly failed in evidence as to the allegation of fraudulent representations by the board of trustees as an inducement for the voting of the bonds. The substance of the evidence was an editorial in The Leader, a local paper published in Okemah, appearing in the issue the day before the election. This editorial was in the nature of a campaign argument in favor of the bonds. Therein it was stated:

"We have assurances from the Okemah council that the bonds will not be used except for a flying school of this nature, a flying school in which the federal government co-operates for the training of army cadets.

"Okemahans have no objections to spending of this money for an army pilot training school, but would object to the spending of this fund merely for a local airport.

"There are many improvements which are needed in Okemah more than just a local airport. Air transportation for towns the size of Okemah, although envisaged, is several years away, years in which a strictly local airport would be used only slightly.

"The Leader has been assured by representatives of the city council and Chamber of Commerce that these bonds will not be issued except with the guarantee of the federal government that an army flying school will be located here.

"It is upon this guarantee as to the use of the $50,000 that The Leader urges a 'yes' vote at the polls tomorrow, a yes vote which reflects confidence in the city council and the Chamber of Commerce to use it for only this expressed purpose."

The editorial did not state that any member of the board of trustees urged the people to vote in favor of said bond issue. It was "The Leader" urging "yes votes." The argument was based upon alleged assurance from the Okemah council. The editor and author of the editorial was called as a witness and testified that information was secured from individual members of the board of trustees, but when asked as to whom he had talked concerning the matter, persons general were stated and Mr. Strong and Mr. Stuart were specified. Neither of these men were members of the board of trustees. The witness would not say what any member of the board told him, but said what he had published was the substance of that learned from the various conversations. He may well have secured his "information" from persons who were not members of the board of trustees. Furthermore, there was not an intimation that any member of the board made any statements whatever to induce voters to support the bond issue.

Plaintiffs rely upon Borin v. City of Erick, decided April 14, 1942, 190 Okla. 519, 125 P. 2d 768. The facts and the evidence in that case are entirely different from those in the instant case. It is specifically stated in that opinion that the minutes and proceedings of the city council definitely showed that the proposed bond issue was for the express purpose of raising $60,000 to supplement a grant of approximately $50,000 from the Public Works Administration to be used in the construction of a power plant that cost about $110,000. Nothing of that kind is reflected in this case.

Plaintiffs contend that under section 6350, O. S. 1931, Title 11, sec. 563, O. S. 1941, only cities of a population of more than 2,000 inhabitants are authorized to acquire, own, and maintain aviation airports.

In Ruth v. Oklahoma City et al., 143 Okla. 62, 287 P. 406, it is held that the power of municipal corporations to incur indebtedness for the purpose of constructing public utilities is conferred by section 27, art. 10, of the Constitution. It is also therein held that if an airport is a public utility, bonds for airport purposes could be issued under section 27, art. 10, of the Constitution. The query was not presented therein.

In McClintock v. City of Roseburg, 127 Ore. 698, 273 P. 331, it was held

that the establishment and maintenance of an airport by a municipality was a public enterprise for which the municipality could issue its bonds. In Dysart v. City of St. Louis (Mo.) 11 S. W. 2d 1045, it is said:

"The expenditure of public funds for an airport is for a public use within constitutional limitations in such cases."

In State ex rel. City of Lincoln v. Johnson, State Auditor, 117 Neb. 301, 220 N. W. 273, it is held that an equipped municipal aviation field is both a public service property and a public utility and the establishment of such a field is a governmental purpose for which bonds may be voted and taxes levied and collected. Plaintiffs cite no case from a court of last resort holding that an airport is not a public utility, and we have found none. It is a matter of common knowledge that municipally owned airports are now being operated throughout our country. If an airport is a public utility, any incorporated city or town in this state may issue bonds and become indebted for the purpose of raising money to acquire such utility under the provisions of section 27, art. 10, of the Constitution of Oklahoma. The power is there clearly provided. The Legislature cannot diminish that power.

Affirmed.

OSBORN, BAYLESS, GIBSON, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and HURST, J., concur in conclusion. CORN, V. C. J., absent.