[No. 28589. Department One. October 27, 1942.]
BREMERTON MUNICIPAL LEAGUE, *Respondent,* v.
SOPHIA BREMER *et al., Appellants.*[1]

*Hulbert, Helsell & Bettens, Paul Fetterman, Ralph Purves,* and *Marion Garland,* for appellants.

*Bryan & Arthur,* for respondent.

ROBINSON, C. J.—This is a taxpayer's suit to annul a lease of two street ends in the city of Bremerton, with

[1] Reported in 130 P. (2d) 367.

the harbor areas in front of and adjacent thereto, and to restrain all of the parties defendant from carrying out its provisions. The relief prayed for was decreed by the trial court, and the defendants appeal from the decree.

The two streets involved, Front and Second, did not originally extend across the tide lands to the harbor area. The intervening tide lands were acquired by the city about 1913; in the one case, by condemnation (*In re Bremerton*, 73 Wash. 565, 132 Pac. 240); in the other, by purchase. In 1914, in order to assist the city to establish a municipal wharf, the board of state land commissioners filed a supplemental plat of Bremerton tide lands. On this is shown the outline of what became the municipal wharf of the city of Bremerton at the foot of Front street, lying within a tract of harbor area of 250 feet frontage and extending to the outer harbor line a distance of 335 feet. This area is designated on the plat "Public Place." Flanking the Public Place on each side is an area 335 feet in depth, 65 feet in width inshore, and 150 feet wide at the outer harbor line. Each of these areas is designated "Waterway."

For many years after the construction of the municipal wharf, the Puget Sound Navigation Company, or its predecessors or affiliates, used this wharf for the transportation, by boats and ferries, of passengers and freight between Seattle and Bremerton, and it was used by smaller transportation companies as a transportation facility in carrying on other commerce by water.

In 1937, Sophia Bremer leased harbor area adjoining the southerly of the waterways, above mentioned, and between it and the United States navy yard, and assigned the lease to the Bremerton Terminal Company, a corporation, of which she owns all the shares, except

two owned by her children. On this harbor area, the terminal company constructed a modern wharf, dock, and ferry landing. The Puget Sound Navigation Company and its affiliates transferred their operations to this wharf, it is said, in 1937 or 1938. We think, however, it must have been well along in 1938, since the evidence shows that the revenue of the municipal wharf during that year was $14,006.11, and in 1939 amounted to but $3,011.51.

After the navigation company transferred its business to the new Bremer wharf, the main building on the municipal wharf was rented for various purposes. A part of the main floor was rented to a grocery company, a portion of the second floor to a dancing school, another portion as a rifle range, and a portion of the lower floor for lumber storage. However, several small vessels have continuously used the wharf as a landing place, paying small monthly sums for the privilege. A freight boat regularly paid wharfage to the city, and the city kept a wharfinger in charge. As we have above stated, the revenue of the wharf in 1939 was but $3,011.51. In 1940, it was $5,107.93, and of this amount $1,994 was wharfage.

In the lease involved in this action, executed on February 19, 1941, the city of Bremerton is lessor, the Bremerton Terminal Company, lessee, and Sophia Bremer is designated as "Third Party." By the terms of the instrument, the city, pursuant to a resolution and ordinance, undertakes to lease to the terminal company, for an eleven year period,—(1) that portion of Front street above the inner harbor line which is used as an approach to the municipal wharf; (2) that part of the harbor area marked "Public Place," occupied by the municipal wharf, the wharf itself, and the buildings thereon; (3) all harbor area included in a lease made

by the state to the city in 1932, and numbered 977 in the land commissioner's office, which lease covers a portion of the northerly of the two waterways, hereinbefore mentioned as flanking Public Place; (4) all harbor area included in a lease from the port of Bremerton to the city of Bremerton, made in 1932, and so ambiguous in its description that the parties to this action are in hopeless conflict as to what area it covers; also similar approaches to the Second street wharf and portions of harbor area in front of it.

The lease provides for a rental of two hundred dollars per month during the first five years and that the rental shall be readjusted at the end of each five-year period by mutual agreement, or, failing agreement, by arbitration.

The lease provides that the lessee shall have the right to remodel the wharves and buildings thereon and maintain and operate them as public wharves, subject to regulation by such authorities as are by law authorized to regulate such utilities. It is further provided that, when the wharves, buildings, etc., have been repaired, they shall be kept in good repair and shall revert to the lessor at the expiration of the lease.

The lease also provides:

"First Party hereby agrees that it will not, during the term of this agreement, or upon expiration thereof, make, or cause to be made, any application to the State of Washington or to the Port of Bremerton, for a lease of any premises upon which Second and Third parties, or either of them, now have a lease from the State of Washington."

The "Third Party" (Sophia Bremer) agrees, in paragraphs eleven and twelve, that she will, within one year from the date of the lease, improve two large areas of nearby upland, and during the remainder of the lease

maintain them as free parking lots; and paragraph nineteen reads as follows:

"It is further agreed that should the amount of rental payable by Second Party to First Party for the premises leased hereby be at any time increased, that then, and in such event, First Party shall pay to Third Party, as additional consideration for the agreements contained in paragraphs 11 and 12 hereof [re parking lots] on the 1st day of each and every month during said lease, an amount equal to the amount of monthly increase in such rental."

Respondent contended in the trial court, and contends here, that the lease is invalid on three principal grounds: (1) that the city is not the owner of the harbor area occupied by the two wharves, and that the city, therefore, has no power to lease this area; (2) that the wharves are public utilities which the city cannot lease without complying with the provisions of chapter 137, p. 573, Laws of 1917 (Rem. Rev. Stat., §§ 9512-9514 [P. C. §§ 1222-1224]), authorizing cities to sell or lease their public utilities, but requiring them to advertise for bids and submit the proposition to lease to the voters of the city for their approval; and (3) that the lease contains agreements which the city had no power to make, namely: (a) that the city would not, during the term of the lease or upon the expiration thereof, make or cause to be made any application for a lease of any premises upon which the lessee or Sophia Bremer now has a lease from the state; (b) that should the rental be increased at any time during the term of the lease, the city shall pay, as a consideration for the maintenance of the free parking lots, an amount equal to the amount by which the rent was so increased.

The trial court held that the lease was invalid on the ground that the city was not the owner of the harbor area occupied by the wharves, and that the city

was without power to lease this area. In an oral opinion, the court stated:

"So then we have a street which, after you pass the outer edge of the tidelands, depends for its quality on what came from the State. The legal title to that land beyond the outer edge of the tidelands has always been in the State, and the only reason we say it is a street end, if that is correct, is because it is virtually a continuation of the upland street, but the title rests somewhere else. . . . Now, there is a difference between the quality of ownership the City has in the outer end of that street and in the inner end."

. In the first paragraph of its decree, the trial court held the ordinance authorizing the lease and the lease itself null and void; in the second paragraph, it enjoined the defendants and all persons in interest from proceeding further under the terms of the lease. The decree continues as follows:

"It Is Further Ordered and Adjudged that the area between the government meander line and the outer harbor line and between the prolongations of the side lines of Second Street across the harbor area, and the area between the government meander line and the outer harbor line and between the prolongations of the side lines of Front Street across said harbor area, and including also all Public Place No. 1 in front of said Front Street, be and said areas are hereby declared to be public streets, extended and dedicated to the use of the public as such, and are forever reserved from lease or sale."

We agree with the result reached. We, however, feel that the adjudication made in the last paragraph of the decree, that is, in the paragraph just quoted, is not necessary to the decision, and that it should be for that reason eliminated. We herein express no opinion as to whether the areas involved are public streets or whether they are for that or any reason forever reserved from lease or sale.

■ · We further think it unnecessary to discuss any of the objections made by the respondent to the validity of the lease, other than that rested upon the provisions of chapter 137, Laws of 1917, p. 573 (Rem. Rev. Stat., §§ 9512-9514). We are of the opinion that these sections of our statutes provide the only procedure by which the city can lawfully sell or lease municipal wharves. Section 9512 provides as follows:

"It is and shall be lawful for any city or town in this state now or hereafter owning any water works, gas-works, electric light and power plant, steam plant, street railway line, street railway plant, telephone or telegraph plant and lines, or any system embracing all or any one or more of such works or plants *or any similar or dissimilar utility or system,* to lease for any term of years or to sell and convey the same or any part thereof, with the equipment and appurtenances, in the manner hereinafter prescribed." (Italics ours.)

The appellants point out that the statute specifically names a long list of utilities, but does not specifically mention wharves and docks. But the statute also says *"or any similar or dissimilar utility or system."* This, we think, includes any kind of utility in whose operations the public has an interest, that is to say, any public utility.

■ The appellants urge that the wharves had been abandoned. As to the Second street wharf, this seems to be true. We have said little concerning that property in this opinion, because we have assumed that, unless the lease is valid as to the Front street wharf, the whole ' project must fail. As we read the record, the Front street wharf was not abandoned—or, if so, only in anticipation of making the lease in question—for the ordinance approving the lease was passed on first reading by the city commission on January 18, 1941. As has been already stated, the revenue from the municipal wharf at the foot of Front street for the year 1940

was $5,107.93, an increase of more than $2,000 over the preceding year, and of the $5,107.93, the sum of $1,994 was wharfage fees; and, although a public utility may, in some circumstances, be abandoned, *State ex rel. Howard v. Seattle,* 154 Wash. 475, 282 Pac. 829; *Woody v. Port of Seattle,* 118 Wash. 163, 203 Pac. 59, it may well be doubted whether an abandonment would be approved which has the appearance of having been made to circumvent the provisions of §§ 9512-9514, inclusive, of the statutes.

The appellants rely strongly—more strongly, we think, than the case warrants—upon *Seattle v. Pacific States Lbr. Co.,* 166 Wash. 517, 7 P. (2d) 967. That action was brought to prevent the execution of a contract disposing of timber located on the Cedar river watershed—the contract not having been submitted to the voters of Seattle in accordance with the provisions of §§ 9512-9514, Rem. Rev. Stat. In holding that the vote of the people was not required, this court held that the timber

". . . happened to be standing on lands embraced in the water system and was merely an incident to, but not a part of, the water system." (p. 529.)

It reiterated that finding on page 530 of the opinion in these words:

"In view of our determination that the standing timber was not a part of the municipal water system, but was merely incidental thereto, . . ."

Clearly, we can arrive at no similar determination in this case. The city is attempting to lease the entire utility, not something merely incidental thereto, and it has even included in the lease a provision tending to disable itself from acquiring other suitable wharf sites, and has further agreed that, if the monthly rental be raised at the end of a five-year period, pursuant to the

provisions of Rem. Rev. Stat., § 9070 [P. C. § 766], it will monthly pay an amount equivalent to the increase to the "Third Party," Sophia Bremer, the *alter ego* of the lessee, for the use of her parking lots.

The decree appealed from is modified by striking therefrom the paragraph hereinabove quoted adjudicating the title to the harbor area adjacent to Front and Second streets, and, as so modified, the decree will stand affirmed.

MILLARD, STEINERT, and DRIVER, JJ., concur.