CITY OF REIDSVILLE v. CITIZENS DEVELOPMENT CORPORATION.

(Filed 7 July, 1961.)

1. **Controversy Without Action § 2—**

    Where the parties submit a controversy to the court upon an agreed statement of facts and admissions in the pleadings, the facts stipulated and admitted are in the nature of a special verdict, and the court may not infer or deduce other facts.

2. **Municipal Corporations § 17— Findings held insufficient to support adjudication of whether city was authorized to sell lands as surplus property.**

    Where, in a proceeding to authorize sale by the city, as surplus property, lands designated as "airport property," the facts agreed failed to disclose whether the land was purchased with the proceeds of a bond issue, whether any bonds against the property are presently outstanding, whether the entire tract was originally acquired for airport purposes, whether an airport is being operated on a portion of the original tract, with

the *locus* being surplus, whether an airport is being operated on separate property, or whether the city had maintained and abandoned the operation of an airport on the property, the findings are insufficient to support a judgment authorizing the city to sell the land as surplus property under G.S. 63-53(d) and G.S. 160-59.

**3. Appeal and Error § 49—**

Where the facts agreed in the submission of the controversy to the court are insufficient to support judgment, the cause must be remanded.

PARKER and HIGGINS, JJ., dissent.

RODMAN, J., concurring.

APPEAL by defendant from *Johnston, J.,* March 1961 Term of ROCKINGHAM.

This is a civil action instituted 7 February 1961 to require defendant to specifically perform its contract for purchase of the "Reidsville Airport Property."

The cause was submitted to the presiding judge upon an agreed statement of facts and the admissions in the pleadings.

The court entered judgment in pertinent part as follows:

"1. That on the 15th day of November 1960, the plaintiff adopted a resolution for the sale of its 'Airport Property,' subject to specified conditions and restrictions as are incorporated by reference in paragraph #4 of the plaintiff's complaint.

"2. That the City Council duly advertised as required by law said sale of real property at public auction, which was held on the 7th day of January 1961, subject to the restrictions and conditions set forth in the said resolution.

"3. That there was no fraud or arbitrary abuse of discretion on the part of the City Council in adopting the said resolution.

"4. That the Mayor and City Council of the City of Reidsville had the legal power and authority to sell its real property known as the 'Airport Property' in the manner prescribed in the said resolution of November 15, 1960.

"5. That said property is surplus city property no longer needed by the city and should be sold by the city. That said property is no longer needed for an airport. That said property is a mile from the city limits and is not needed for any Governmental or public purpose.

"6. That the City of Reidsville has no substantial need for the land it now owns and holds for Airport purposes. The city has no immediate use to which the said land can be reasonably put and there are no plans in prospect to which the said land could be reasonably devoted. That the disposal of said land in the manner done is to the best interest of the citizens and taxpayers of the City of Reidsville.

"NOW, THEREFORE, IT IS ORDERED that the defendant perform its purchase contract and agreement and pay to the plaintiff FORTY THOUSAND, FIVE HUNDRED ($40,500.00) DOLLARS, the remainder of the purchase price, with interest from the 6th day of February 1961 . . . ."

Defendant appeals.

*Jule McMichael and T. M. Rankin for plaintiff, appellee.*
*Benjamin R. Wrenn for defendant, appellant.*

MOORE, J. Plaintiff proposes to convey 155.52 acres of land known as the Reidsville Airport property, under authority of G.S. 63-53(d) and G.S. 160-59. On 15 November 1960 the City Council of the City of Reidsville adopted a resolution finding that the City "no longer had any need for . . . the Airport property," and ordering that it be sold at public auction subject to specific conditions and covenants restricting its use to industrial and commercial purposes. Due advertisement of the sale and the terms thereof was had. Defendant became the last and highest bidder at the price of $45,000, deposited ten per cent of the bid, and executed a contract in which it agreed to purchase the land according to the terms of sale and at the price bid. The sale was confirmed. Plaintiff executed and tendered to defendant a deed for the land containing the restrictions. Defendant refused to pay the balance of the purchase price and accept the deed. This action for specific performance was instituted and the judgment set out above was entered. Defendant excepts to the signing of the judgment.

The admissions in the pleadings and the facts stipulated are insufficient to support the findings and conclusions of the court that ". . . the Mayor and City Council of the City of Reidsville had the legal power and authority to sell its real property known as the 'Airport Property' . . . ," and that ". . . said property is surplus city property."

"Where, as here, a case is tried on an agreed statement of facts, such statement is in the nature of a special verdict, admitting there is no dispute as to the facts, and constituting a request by each litigant for a judgment which each contends arises as a matter of law on the facts agreed, and consequently the court is not permitted to infer or deduce further facts from those stipulated." *Sparrow v. Casualty Co.,* 243 N.C. 60, 62, 89 S.E. 2d 800. Where agreed facts are insufficient to determine the controversy, the cause will be remanded for further proceedings as the rights of the parties may require. *Guilford College v. Guilford County,* 219 N.C. 347, 349, 13 S.E. 2d 622.

It does not appear from the record whether the 155.52 acres known as the Airport property was acquired by the City of Reidsville from

funds realized from the bond issue approved by this Court in *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211 (1944), or by other means, whether there are presently any outstanding airport bonds, whether it is the entire tract originally acquired for airport purposes, whether an airport is now being operated on a portion of the original tract with the 155.52 acres being surplus property not needed in that connection, whether an airport is being operated on other and separate property and this tract is no longer necessary for airport purposes, whether Reidsville has even constructed, maintained, and operated an airport, or whether an airport was formerly operated and was before 15 November 1960 abandoned.

*Quaere:* Is the proposed sale subject to the provisions of G.S. 160-2, subsec. 6?

The judgment below is vacated and the cause is remanded for further proceedings and that sufficient evidence may be adduced to support a judgment determining the controversy.

Remanded.

PARKER and HIGGINS, JJ., dissent.

RODMAN, J., concurring. It is apparent from the briefs and oral argument that the parties hope for an affirmance of the judgment, thereby securing a declaration from this Court that the deed tendered defendant will vest good title subject to covenants restricting the use of the property to industrial purposes.

Neither the pleadings nor the facts stipulated suffice to give an answer to the crucial question seemingly presented by the appeal. That question is: May a municipal corporation which has, with the approval of the electorate, incurred a debt to provide airport service, by order of the city council cease to furnish such service, sell the property, and use the proceeds in such manner as the city council may desire?

The parties stipulated: "That said property is surplus city property no longer needed by the city and should be sold by the city. That said property is no longer needed for an airport. That said property is a mile from the city limits and is not needed for any Governmental or public Purpose." Do the parties by this stipulation mean this property is not needed as an airport, a public purpose, because this public purpose has been filled by other properties dedicated to that purpose or do they mean that the city council can set at nought the will of the people and contrary to their direction dispose of property which the electorate has directed the city to acquire for a specific public purpose?

As early as 1929 the Legislature granted municipalities authority

to acquire, own, and regulate airports or landing fields for the use of airplanes and other aircraft, c. 87, P.L. 1929, now G.S. 63-2. The statute declared an expenditure so made was for a public purpose. G.S. 63-5. This legislative declaration had judicial concurrence. *Goswick v. Durham,* 211 N.C. 687, 191 S.E. 728; *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211; *Reidsville v. Slade,* 224 N.C. 48, 299 S.E. 2d 215 (presumably the property here proposed to be sold is the property involved in that litigation); *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803.

The complaint alleges that the city council purported to act under the authority given by G.S. 160-59, which provides: "The Governing body of any city or town shall have power at all times to sell at public outcry, after thirty days' notice, to the highest bidder, any property, real or personal belonging to any such town, and apply the proceeds as they may think best." This statute has been in effect since 1873. It has never been interpreted to authorize the sale of property purchased for a specific purpose when needed to accomplish that purpose. It permits the sale of such property as may not be needed in the continuing performance of the service undertaken. *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484; *Winston-Salem v. Smith,* 216 N.C. 1, 3 S.E. 2d 328; *Southport v. Stanly,* 125 N.C. 464.

In 1945 the Legislature enlarged the authority of local governmental units to provide aeronautic facilities. C. 490, S.L. 1945, now in substance art. 6, c. 63, of the General Statutes. Section 6 of that Act, now G.S. 63-53, titled "Specific powers of municipalities operating airports," gives the municipality authority to (a) appoint an officer or board to supervise the construction and operation of the airport, (b) adopt rules and regulations for the efficient operation of the facility, (c) lease to private or other governmental agencies *for operation,* and (d) "sell or lease *any property,* real or personal, acquired for airport purposes and belonging to the municipality, which in the judgment of its governing body, *may not be required for* aeronautic purposes . . ." (Emphasis added.) Each part is predicated on the assumption of continuing service.

G.S. 63-48 defines the word "aeronautics" as "transportation by aircraft; the . . . operation, improvement, repair, or maintenance of airports . . ." G.S. 63-53 does not, in my opinion, authorize the city council to decide whether the municipality, having once undertaken to provide aeronautic facilities, should continue to provide such service. The statute presupposes the continuance of such service. The facts necessary to determine whether there is need for a particular service and the need for a particular piece of property to provide the service are not identical. The Legislature carefully limited the authority of

the governing authorities to a decision of what was not needed for the performance of the service. *Winston-Salem v. Smith, supra; Mullen v. Louisburg, supra.*

Municipalities have legislative permission to perform many public services, proprietary in nature. Illustrative are: playground and recreational facilities, G.S. 160-158; public parking lots, G.S. 160-200(31); market houses, G.S. 160-167; art galleries, G.S. 160-200(40); parks, G.S. 160-200(12); light and water to patrons outside as well as within the corporate limits, G.S. 160-255; public hospitals, G.S. 131-126.20; housing facilities, 157-42. Some of the services authorized are necessary expenses; others are not. Where the service is not a necessary expense, the governing authorities must permit the electorate to decide whether a debt shall be created to provide the service. When citizens of a municipality have voted to acquire properties needed to provide these services, the governing authorities are not authorized to defeat popular will by declaring the service no longer needed and in this manner obtain authority to sell on the theory that the property is surplus property. *Moore v. Gordon,* 122 S.W. 2d 239; *Bremerton Municipal League v. Bremer,* 130 P. 2d 367.

If the city fathers would sell the property and thereby disable the community from rendering the service as directed by the electorate, special legislative authority must be obtained. Perhaps the Legislature in its wisdom has already provided the means by which the governing authorities may act. They are authorized, *with the approval of a majority of the qualified voters of the town* to "sell or lease upon such conditions and with such terms of payment as the city or town may prescribe any waterwork . . . or any other public utility which may be owned by the city or town." G.S. 160-2(6).

An airport acquired and maintained by a municipality meets the test of a public utility as defined by our decisions. *Utilities Com. v. Water Co.,* 248 N.C. 27, 102 S.E. 2d 377; *Turner v. Public Service Co.,* 170 N.C. 172, 86 S.E. 1033. It has been so held when the specific question was presented. *S. v. Johnston,* 220 N.W. 273; *S. v. Jackson,* 167 N.E. 396; *Price v. Storms,* 130 P 2d 523; *S. v. Board of County Comrs.,* 79 N.E. 2d 698; *Jones v. Keck,* 74 N.E. 2d 644.

The facts stipulated are in my opinion insufficient to determine the right of the governing authority to order a sale. If the property is not needed for the operation of an airport, the mere fact that the city restricts the purchaser's right to use for a fixed period to industrial uses would not impair the title.