### BOWEN v. GARBER, Mayor.

No. 11013—Opinion Filed Dec. 9, 1919.

(Syllabus by the Court.)

1. **Municipal Corporations — Public Utility Bonds—Submission to Voters — "Leasing or Purchasing Land."**

The submission to the qualified property taxpaying voters of a city of a proposition to issue bonds in a stated amount for the purpose of "leasing or purchasing" lands necessary for the construction of public utilities to be owned exclusively by said city, pursuant to section 27, article 10, William's Constitution, is not objectionable upon the ground that it is a double proposition.

2. **Same — Approval of Proposition — Authority Conferred.**

The approval of such a proposition by the taxpaying voters of the city confers upon the municipal authorities the right to either "lease or purchase" land for such purpose, which alternative is properly exercised by the passage of an ordinance providing for the issuance of bonds for the purpose of providing funds with which to "purchase lands" for the purpose of constructing such utilities.

Error from District Court, Garfield County; J C. Robberts, Judge.

Action by Geo. G. Bowen against M. C. Garber, as mayor of the city of Enid. Judgment for defendant, and plaintiff brings error. Affirmed.

W. H. Hills, for plaintiff in error.

Geo. P. Glaze for defendant in error.

KANE, J. This was a suit in equity, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the purpose of enjoining the latter, as mayor of the city of Enid, from signing and executing three separate issues of municipal bonds which had been previously authorized by a vote of the people

pursuant to section 27, art. 10, Williams' Constitution. Hereafter, for convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court.

Upon the action being filed, the trial court granted a temporary restraining order. Thereafter the defendant filed his answer, and upon the trial which followed, the court dissolved the temporary restraining order, refused to grant the relief prayed for, and rendered judgment generally against the plaintiff and for costs of the action. It is to reverse this judgment that this proceeding in error was commenced. The three propositions to be voted upon by the people, were numbered one, two, and three, respectively, and were submitted in substantially the following form:

Proposition No. 1. Shall the city of Enid, Garfield county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds in the aggregate principal sum of $320,000.00 to provide funds for the purchase of "leasing or purchasing land" for water lines and water supplies for the city and for extending, improving, and equipping its present water system, to be owned and controlled exclusively by the city, etc.

Proposition No. 2. Shall the city of Enid, Garfield county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds in the aggregate principal sum of $180,000 to provide founds for the purpose of "leasing or purchasing land" for a site for a sewage disposal plant and the construction, erection, and equipment of a sewage disposal plant upon said site; for the right-of-way and sewer lines and the extension and improvement of a sewer system for said city, to be owned and controlled exclusively by said city, etc.

Proposition No. 3. Shall the city of Enid, Garfield county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds in the aggregate principal sum of $15,000.00 to provide funds for the purpose of "leasing or purchasing grounds" for the purpose of equipping and using said grounds for children's play grounds, for the promotion of the physical health of the children of the city of Enid, to be owned and controlled exclusively by said city, etc.

Each proposition, thus submitted, was carried by a large majority and thereafter the board of commissioners of the city, presuming to act under the authority conferred by the property taxpaying voters, passed three separate ordinances for the purpose of authorizing the issuance of and fixing the details and form of bonds to be issued, in

each of which ordinances it was provided that said bonds should Le issued for the purpose of providing funds with which to "purchase lands," etc.

The question presented for review is stated by counsel for plaintiff in his brief as follows:

"There is only one proposition of law in this case. Plaintiff in error contends that where propositions for the issuance of bonds for the purpose of providing funds for the purpose of leasing or purchasing land on which to construct certain public utilities were submitted to the voters and approved by them at an election held for that purpose, the city is not thereby authorized to issue said bonds for the purpose of providing funds for the purpose of purchasing land on which to construct said public utilities and an ordinance directing the issuance of said bonds for such purpose is illegal."

In argument counsel divides this proposition into several "points," the first of which he states in his brief as follows: "Submitting the proposition in the alternative makes it really two propositions voted on as one." The precise contention made under this point is, that because, in each instance, the proposition was submitted in the alternative, for the purpose of "leasing or purchasing land." each must be deemed to be a dual proposition and this is not permitted under the law. This contention seems to us to be wholly untenable, as well as against the great weight of authority. In the case of City of Albuquerque v. Water Supply Co., 174 Pac. 217, the Supreme Court of New Mexico held that the submission of a proposition to the voters to issue bonds for the "purchase or erection" of a system of waterworks was not a double proposition. The court said that such a proposition is to be construed as one to acquire a waterworks system either by purchase or construction, and further held that small irregularities are not to be noticed when the voters have unmistakably authorized the incurring of the indebtedness. In Tullock v. City of Seattle (Wash.) 124 Pac. 481, the proposition was to issue bonds with which "to purchase an existing railway or build a new one," giving the city the option of doing either. It was held that, the question submitted being for the sole purpose of acquiring or obtaining a particular utility, the proposition as submitted was not a double proposition. In Thomas v. City of Grand Junction, 56 Pac. 667, the Supreme Court of Colorado held that the use of the word "or" in submitting a proposition to the voters for the purpose of "buying or building" a utility does not render it a joint or dual proposition. The Supreme Court of California had before it the same question in 1911, and held in Clark v. City of Los Angeles, 116 Pac. 722, that a proposition "to purchase or build" an electric light plant, proposed a single municipal improvement, which it was sought to obtain, and was not a double proposition. And at the same term, in Clark v. City of Los Angeles. 116 Pac. 966, the court adhered to this ruling in the case of harbor improvements. And again in Hartigan v. City of Los Angeles, 149 Pac. 590, the same legal proposition arose and was determined as in the former cases.

Other cases to the same effect are as follows: Swan v. City of Murray (Ky.) 142 S. W. 244; Simpson v. City of Nacodoches (Tex.) 152 S. W. 858; Ryan v. Mayor of the City of Tuscaloosa (Ala.) 46 South. 638; State ex rel. City of Columbia v. Allen (Mo.) 82 S. W. 103; State ex rel. Town of Canton et al. v. Allen, State Auditor (Mo.) 77 S. W. 868.

These cases uniformly hold that the principal object of the proposition submitted is to place before the voter the matter of his willingness to incur the indebtedness for public utilities to be owned by the city in the amount specified, and when this has been done other matters of detail must be left to the duly authorized municipal officers. Our constitutional provision, section 27, art. 10, Williams' Constitution. provides that incorporated cities may, by majority of the qualified property taxpaying voters of said city, be allowed to become indebted to an unlimited amount "for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such cities." In Coleman v. Frame, 26 Okla. 193, this court laid down for the first time the rule for submitting such question to a vote of the taxpaying voters. It was held that the proposition must be stated in such specific language as to apprise the voters of the nature of the public utility the city wishes to purchase, construct, or repair. Subsequently the sufficiency of such propositions as tested by this rule often came before the court for consideration.

"For the construction of an electric light plant to be owned exclusively by said city" was held to be sufficient in City of Woodward v. Raynor. 29 Okla. 493.

"Erecting and equipping public fire stations and purchasing equipment therefor" was held to be sufficient in Oklahoma City et al. v. State ex rel. Edwards, 28 Okla. 720.

The following cases are also in point on this and many other questions relating to the creation of municipal indebtedness under this constitutional provision: State ex rel. Edwards v. Miller, Mayor, 21 Okla. 448:

State ex rel. v. Barnes, 23 Okla. 191; Ardmore v. State, 24 Okla. 862; McDougal v. Broken Bow, 71 Oklahoma, 176 Pac. 959.

Another point made by counsel for the plaintiff is that the ordinances passed by the city authorities are in conflict with the propositions allowed by the voters because the ordinances authorize the issuance of bonds for the purpose of providing funds with which "to purchase land" for certain public utilities, while the propositions submitted to the electors authorized either the "leasing or purchasing land" for such public utilities. We are also of the opinion that this point is not well taken. If, as we have held, the propositions submitted were not objectionable upon the ground that they were submitted in the alternative, of course there must come a time when the municipal authorities would be called upon to exercise the duty imposed upon them by the allowance of the propositions in this form. The voters having authorized the city authorities to either "purchase or lease" the land, in our judgment the right time to determine which of these alternatives should be followed was the time selected, to wit, the time of passing the ordinance "authorizing the issuance of and fixing the details and form of bond."

As the remaining point made by counsel seems to be embraced in the points already considered, no further discussion of it is necessary.

For the reasons stated, the judgment of the court below is affirmed.

RAINEY, V. C. J., and JOHNSON, PITCHFORD, and BAILEY, JJ., concur.