PALMER (PUBLIC SERVICE CO., Intervener) v. TOWN OF SKIATOOK et al.

No. 34166.   May 23, 1950.

Rehearing Denied July 18, 1950.

*220 P. 2d 273.*

Doerner, Rinehart & Stuart, Harry D. Moreland, and Jack E. Campbell, all of Tulsa, for plaintiffs in error.

R. L. Davidson, Jr., and James G. Davidson, both of Tulsa, for defendants in error.

LUTTRELL, J.   This action was brought by A. W. Palmer and Boyd

Hisaw, as plaintiffs, to enjoin the town of Skiatook and its board of trustees from issuing and disposing of bonds in the amount of $49,600 for the purpose of acquiring or constructing an electric distribution system. The Public Service Company of Oklahoma, which was then serving the town with electricity, without a franchise, intervened in the action and joined with the plaintiffs in asserting the invalidity of the bonds. The trial court issued a temporary injunction when the petition was filed, but thereafter, upon a full hearing, set the temporary injunction aside, denied a permanent injunction, and dismissed the action at the cost of plaintiffs and intervener. Thereupon Boyd Hisaw withdrew as plaintiff, and the action proceeded in the name of A. W. Palmer and Public Service Company of Oklahoma.

The petition of plaintiffs alleged several grounds in support of their contention that the issuance and sale of the bonds should be enjoined, and in this court, in their briefs and oral argument, they urge these contentions, or grounds, and assert that the trial court should have issued the permanent injunction as prayed for. We will dispose of these contentions in the order in which they appear in the brief of plaintiff in error.

The first contention made by plaintiffs is that the annexation of certain additions to the town of Skiatook, the residents of which were permitted to vote in the bond election, was invalid, and that therefore the voters residing in those precincts were not entitled to vote. Plaintiffs assert that the town of Skiatook was originally incorporated solely in Tulsa county, and that the annexation of these additions, which lay within Osage county, was forbidden by the Enabling Act and by article 17, §8, of our Constitution, which provided that the boundaries of Osage county should remain unchanged until all the lands of the Osage Tribe of Indians should have been allotted, and until the same shall be changed as provided by the Legislature for changing county lines. We find nothing in the provisions of the Enabling Act nor of the Constitution to support the argument that the extension of the boundaries of the town of Skiatook into Osage county changed the county line in any respect. Therefore, there was no violation of the constitutional provision or of the provision of the Enabling Act.

Plaintiffs also contend that no statutory authority exists authorizing a town to extend its boundaries into another county, although under our statutes towns may be incorporated in two or more counties, citing 43 C.J. p. 117, §74. Examination of our statutes discloses that the Legislature, in 11 O.S. 1941 §1101, expressly authorized the incorporation of a town in two or more counties. By 11 O.S. 1941 §482 and §1042, towns are given the authority to extend their boundaries under the conditions in those sections specified. In these sections there is no restriction placed upon the right to take in additional territory because of the fact that it does not lie within the same county, and in addition it is expressly provided that a map or plat of the territory annexed shall be filed in the office of the register of deeds of the county "where the annexed territory or the greater portion of it is situated". We consider this sufficient statutory authority for the incorporation by a town into its territorial limits of any property which it was authorized to annex by the sections cited, regardless of the county in which such territory may be situated.

Plaintiffs further assert that an ordinance admitting one of said additions into the town is void because of its failure to recite the jurisdictional facts. This for the reason that the ordinance recites that the petition for annexation was signed by more than three-fourths of the residents, whereas 11 O.S. 1941 §482 requires that it be signed by not less than three-fourths of the legal voters. In Missouri-Kansas-Texas R. Co. v. Maltsberger, 189 Okla. 363, 116 P. 2d 977, we said:

"An ordinance annexing territory to a city or town is not void on its face merely because it fails to recite the existence of jurisdictional facts. The only effect of failure to recite jurisdictional facts is to enable an interested party, other than the state, to attack the validity of the ordinance, and show, if he can, that the jurisdictional facts did not exist."

In that case we pointed out that in Barton v. Stuckey, 121 Okla. 226, 248 P. 592, and City of Maud v. Tulsa Rig, Reel & Mfg. Co., 165 Okla. 181, 25 P. 2d 792, and similar cases, the ordinance affirmatively showed on its face an absence of jurisdictional facts. In the instant case the ordinance does not show that the residents signing the petition were not legal voters, and therefore the burden was upon plaintiffs to show such fact by evidence. This they wholly failed to do. The other additions were taken into the town by resolution under the provisions of 11 O. S. 1941 §1042, and no irregularity in connection therewith is shown.

Furthermore, it appears that these additions were annexed to the town of Skiatook in 1912, and have constituted a part of the town from that time to the present.

In City of Blackwell v. City of Newkirk, 31 Okla. 328, 121 P. 260, cited with approval in Biggerstaff v. City of Altus, 114 Okla. 98, 243 P. 751, we said:

"When sufficient facts exist to confer authority and jurisdiction on the city council to annex adjacent territory to the city, and there has been a substantial compliance with the provisions of the statutes relating thereto, the validity of such annexing ordinance cannot be attacked in a collateral proceeding by reason of defects, informalities, or irregularities in its passage."

It follows that this contention of plaintiffs is without substantial merit.

In their next contention plaintiffs assert that the bonds are invalid for the reason that the procedure prescribed in 11 O. S. 1941 §§1007 and 1008 was not followed. Examination of the record discloses that the proceedings for the issuing of the bonds were in accordance with the provisions of article 10, §27 of the Constitution, and 11 O.S. 1941 §§61 to 66, inclusive.

In State v. Keith, 179 Okla. 563, 66 P. 2d 1059, we held that article 10, §27 of the Constitution was self-executing, and that the power therein conferred could not be restricted or extended by the Legislature, but stated that we did not hold that the Legislature could not provide a specific and convenient method of carrying out the provisions of section 27.

Counsel for plaintiffs assert that sections 1007 and 1008 were enacted for this purpose, but examination of those sections discloses that they were apparently enacted for the purpose of providing an alternate or different method which might be pursued by towns in establishing a system of electric lights. Said sections provide for the levy of a tax to provide the money necessary to establish such electric lighting system, and further provide that in the event the tax is insufficient to raise the necessary amount, then the town may issue its bonds therefor. This provision and the further provision that the bonds shall not exceed 5 per cent of the taxable value of the property does not evidence a purpose to carry out the provisions of article 10, §27 of the Constitution, but are inconsistent therewith. 11 O.S. 1941 §§61-66 was apparently enacted by the Legislature for the purpose of providing a method or procedure to be followed in order to carry out the grant of power in article 10, §27, and this was the procedure followed by the town of Skiatook. This was, in our judgment, sufficient, and the town was not required to comply with the provisions of 11 O.S. 1941 §§1007-1008.

It is next contended that the initial steps for the issuance of bonds were taken at a special meeting of the town trustees, and that such meeting was not legal for the reason that no call

or notice was issued or given as required by 11 O.S. 1941 §641. The evidence shows that the town had never provided for regular meetings of the town trustees, but that all their business was conducted at special meetings, and that in this case, although no call was issued for the special meeting, all the trustees were present and signed a written waiver of notice of the time and purpose of the meeting. This was sufficient, in our judgment, to make this special meeting legal.

The proposition submitted to the voters of Skiatook reads in part as follows:

"Proposition
"Shall the Town of Skiatook, State of Oklahoma, incur an indebtedness in the sum of Forty-nine Thousand Six Hundred ($49,600.00) Dollars by issuing its negotiable coupon bonds in said sum to provide funds for the purpose of purchasing an electric distribution system and repairing and improving same, or constructing a new electric distribution system, if that be more expedient or desirable, said electric distribution system to be owned exclusively by said town; . . ."

Plaintiffs contend that by this proposition two purposes for the use of the bonds were submitted to the people without designating how much of the money should be used for each purpose. They say the purposes are (1) to purchase or construct the distribution system, or (2) to repair the distribution system. They urge that the failure to specify the amount of money to be used to purchase or construct the system, and the amount to be used for repairs, made the proposition void for uncertainty, citing City of Alva v. Mason, 150 Okla. 25, 300 P. 784; Bowen v. Garber, 77 Okla. 16, 185 P. 1095, and State ex rel. City of Cushing v. King, 162 Okla. 69, 19 P. 2d 138. We are unable to agree with this contention.

The reasonable interpretation of the proposition submitted to the voters of Skiatook was that the bonds were to be used for the purpose of acquiring an electric distribution system in one of two ways: (1) the purchasing, repairing, and improving of an electric distribution system, or (2) in constructing a new electric distribution system if the council found that the construction of a new system was preferable to the purchase and repair of an old one. In either event, only such portion of the bond issue as was necessary to effect the purpose was to be used. While the proposition does not so state, it is reasonable to assume that the town proposed to acquire, if possible, the distribution system then being used to service the town, and to improve and repair the same as might be found necessary in order to put it in the best possible condition. This was, we think, contemplated by proposition (1). If the system then serving the town could not be acquired, or if the cost thereof, with the necessary repairs and improvements, was too great, then the trustees were to construct a new distribution system.

These purposes were in the alternative, and the question of the amount of repairs and improvements necessary, if the old plant was acquired, was, we think, discretionary with the trustees, depending upon the amount paid for the old plant, and what repairs or improvements were most necessary to enable the trustees to place the old plant in good working order. In this respect the proposition is somewhat similar to the proposition involved in McDougald v. Incorporated Town of Broken Bow, 71 Okla. 231, 176 P. 959. In that case the proposition submitted to the voters was whether the town should issue its bonds in the amount of $17,500 for the purpose of providing funds for purchasing a site, and constructing a building thereon for a town hall and jail, and furnishing the same. In support of the claim that the proposition was too indefinite and uncertain, it was suggested that the board of trustees might attempt to use only a small part of the proceeds in

the erection of a comparatively worthless building, and spend practically the entire fund in furnishing the same. We rejected this contention, saying that we must presume that the funds would be expended in good faith and in a lawful, reasonable and business-like manner for the purposes for which the indebtedness was authorized, and we held that the proposition was sufficiently definite and certain, and sustained the validity of the bonds. Likewise, in the instant case, we think that the amount to be expended for the acquisition of the system and for repairs and improvements, if one was purchased, was properly left to the judgment of the trustees, and we will presume that they will act in good faith for the best interests of the town. There is nothing in the record to indicate a contrary intention on their part.

The last contention of plaintiffs is that the trial court erred in striking certain allegations from plaintiffs' pleading, and in refusing to permit plaintiffs to amend their petition to present such issues. By the allegations so stricken plaintiffs alleged that the board of trustees of Skiatook knew that an adequate new distribution system could not be purchased for the sum of $49,600, but that it would cost $75,000, or more, to construct an adequate new system. They further alleged that the voters had theretofore rejected a proposition to issue bonds in the sum of $75,000 for such purpose, and that in truth and in fact it was the intention of the board to obtain approval of the bonds in the sum of $49,000, which they knew to be inadequate, and later attempt to secure the approval of an additional bond issue necessary to complete the distribution system. The trial court sustained the motion of defendants to strike these allegations and refused to permit similar allegations by way of amendment.

In their argument on this contention plaintiffs rely upon Borin v. City of Erick, 190 Okla. 519, 125 P. 2d 768. In that case, the purpose of the council,

as reflected by the minutes of its meetings, was to construct a plant costing $110,000 by the use of a bond issue of $60,000 and a loan to be obtained from the Federal Government. Pursuant to this purpose the proposition to issue bonds in the amount of $60,000 was submitted to and approved by the voters. After the bonds had been voted the Federal Government withdrew its contemplated grant of $50,000. Notwithstanding this fact, the city was proceeding to sell and deliver the bond issue when the plaintiff brought an action to enjoin such sale and delivery. In that case we held that the bond ordinance, and the proposition submitted to the voters, did not actually specify the real purpose of the bond issue, since they did not mention the proposed Federal grant, when, as a matter of official record, the purpose was that the bond issue, together with the sum to be obtained through the Federal grant, should be used to erect a $110,000 plant.

There is nothing in the record in the instant case which makes it comparable to the situation in the Borin case. In the Borin case we pointed out that, in Reid v. City of Muskogee (137 Okla. 44, 278 P. 339) we held that the motives of officials and electors were not proper subjects of judicial inquiry in an action like this, and said that the court there referred to personal motives and not to purposes as expressed by official action.

In the instant case there is no official action by which the motives or purposes of the trustees are in any wise impugned.

In Price v. Storms, 191 Okla. 410, 130 P. 2d 523, we refused to consider evidence of newspaper articles stating that the editor had been assured by representatives of the city council and Chamber of Commerce that the bonds would not be issued except with the guarantee of the Federal Government that an army flying school would be located in Okemah if the airport for which the bonds were to be voted was

built. In that case we called attention to the fact that the Borin case was based upon the showing of purpose reflected by the minutes and proceedings of the city council, and that nothing of that kind was reflected in this case. The rule announced in Price v. Storms, supra, applies in the instant case, and evidence of what purpose the trustees might have, but had not expressed, could not be used to defeat the bond issue. From the record it appears that the proceedings leading up to the issuance of the bonds had been duly approved by the Attorney General, and that the bonds can be sold and the proceeds used for the purposes stated in the proposal submitted to the voters. We find nothing in the record invalidating or affecting the validity of the bonds, and the objections of the plaintiffs and the intervener to their validity are, in our judgment, wholly untenable.

Affirmed.