SOLOMON v. WILMINGTON SEWERAGE CO.

(Filed October 15, 1903.)

INJUNCTIONS—*Restraining Order.*

> Where the plaintiffs alleged that defendant, a public sewer corpora-
> tion, had contracted to furnish sewer facilities to plaintiffs and
> other lot owners in consideration of an initial payment of $50
> for connections and an annual rental of $2, and that by a change
> in defendant's by-laws the annual charge had been increased,
> that such new rental was unreasonable and exorbitant, and that
> defendant was discriminating in such change in favor of some
> patrons and against others, and had threatened that unless
> plaintiffs paid the increased rate their connections would be cut
> off, the effect of which would be to cause plaintiffs irreparable
> damage. Defendant answered, admitting the raise, denying that
> the new rate was unreasonable and that any discrimination
> existed. On such pleadings alone an order refusing to dissolve
> a temporary injunction and continuing the same until the trial
> was proper.

ACTION by B. Solomon and others against the Wilmington
Sewerage Company, heard by Judge *R. B. Peebles,* at Wil-
mington, March 24, 1903. From a judgment for the plain-
tiffs the defendant appealed.

*Bellamy & Bellamy* and *Rountree & Carr,* for the plain-
tiffs.
*J. D. Bellamy* and *E. K. Bryan,* for the defendant.

CONNOR, J. The plaintiffs allege that the defendant com-
pany was duly incorporated by the General Assembly of this
State with authority to establish a system of sewerage in the
city of Wilmington, and to charge for the use of said sewers
such reasonable sums as the board of directors should from
time to time adopt, and with the authority to enforce the col-
lection of such charges by severing the connection of such

defaulting user with the main sewer. That pursuant to permission granted by the city of Wilmington, the defendant laid its pipes and mains along and under certain streets of said city upon which the plaintiffs and other persons resided. That the plaintiffs and a great many other citizens of Wilmington living along the streets and alleys upon which, by public authority, the defendant has laid its pipes and constructed its sewerage system were desirous of obtaining the benefit of an efficient sewerage system for their respective premises at what they regarded as a reasonable cost, and each of the plaintiffs and the others so situated made application for connection therewith. That the defendant company proposed to these plaintiffs, and for all others for whom this suit is brought, that if they would pay to the defendant the sum of fifty dollars for making the connection between the premises of each and every one of these plaintiffs and the others and the pipes of the defendant company, that the defendant would charge each of them so paying the sum of fifty dollars an annual rental, as aforesaid, for the use and service of the sewerage system of the defendant, the sum of two dollars, and no more; or that if persons desiring to connect with and use their said sewerage system preferred it, they might pay twenty-five dollars for connection and an annual rental of four dollars. That each of the plaintiffs and many more residents and citizens on the streets and alleys along which the sewerage system of the defendant company had been constructed, and on whose behalf this suit is also brought, accepted the first proposition of the defendant company and entered into a contract with the said company by which each of them paid to the said defendant company the sum of fifty dollars for connection, and entered into a contract to pay to the said company an annual rental of two dollars for the use of the sewerage system of said company, and many other citizens, residents on the streets and alleys along which the said sewer-

age system had been constructed, accepted the alternative proposition of the defendant and entered into a contract by which they paid to the defendant for connection twenty-five dollars, and agreed to pay four dollars per annum as rental for the use of said sewerage system; and these contracts so entered into by the defendant and the plaintiffs and all others for whom this suit is brought have been scrupulously kept and performed on the part of both contracting parties up to the first day of January, 1903. That the stock of said company thereafter passed into the hands of persons other than those owning it at the time of the making of said contracts, and that the defendant company on or about the first of January, 1903, in utter disregard and violation of the contract rights of these plaintiffs and all others for whom this suit is brought, undertook to raise the rate of annual rental of said sewerage system to an unreasonable and exorbitant rate, greatly in excess of the contract rates hereinbefore set out, and served a notice on these plaintiffs that unless payment was made in accordance with the advanced charges, unreasonably and unjustly and in violation of the contract rights of the plaintiffs exacted by the defendant, that the defendant company would disconnect the premises of the person so refusing to pay with the main sewer. That these plaintiffs have heretofore and in proper time tendered to the defendant the various sums due by each one of them as an annual rental for the service of the sewerage system, strictly in accordance with the terms of their contract, and it was refused by defendant company. The plaintiffs allege that if the threat of the defendant is carried out and their premises are disconnected with the main sewer, the injury will be to them and each of them irreparable, and an action for damages would be, as they are advised, totally inadequate; that the defendant is insolvent and has an existing mortgage upon its entire system for $150,000, which is greatly in excess of the sum

SOLOMON v. SEWERAGE CO.

which the system would bring upon public sale; that the
rates demanded by the defendant are not only unjust and
unreasonable, but they are discriminating, in that some of
the patrons of the defendant who are situated with reference
thereto as the plaintiffs have been offered more advantageous
terms and more reasonable rates than those exacted from the
plaintiffs. The plaintiffs ask that the defendant be enjoined
from disconnecting the premises of the plaintiffs or in any
manner interfering with the proper use of the sewerage sys-
tem by the plaintiffs, and from charging or exacting more
for the use of their system than the prices fixed in the con-
tracts.

The defendant company, answering the complaint, says
that at the time the alleged contract was made with the plain-
tiffs the defendant had in force the following by-law: "Arti-
cle 3. The charge or fee for connecting with the company's
sewer shall be $50 for every connection made for each person
or house; it shall be payable strictly in advance. All persons
connecting shall also pay a fee of $2 per year, also in advance,
for keeping in repair the sewers; any failure to pay this
fee for twenty days shall subject the delinquent to a forfeit-
ure of his right, and the company at its option shall have
the right to sever the connection." That on September 15,
1895, the by-laws were amended as follows: "On and after
this day the sum of $50 with an annual rental of $2, or the
sum of $25 with an annual rental of $4, shall be charged each
resident for a connection, but there shall be no additional
charge for servant houses or stable connections with said
residence and used by the occupants thereof." That the rate
fixed at either of said dates was not, and was never intended
to be, a permanent contract that the defendant should never
change its rates, but on the contrary they were rates estab-
lished by a mere by-law, which was changeable at the will of
the company; that thereafter the defendant obtained the per-

mission of the city of Wilmington to extend its system of
sewers through all the streets of the city at a very great cost,
to-wit, $200,000, and constructed a large and efficient sani-
tary system, together with the most modern and approved
form of disposal plant, and laid down about forty miles of
pipes and connections, and thereby found it absolutely neces-
sary to change the rates for sewerage connections in order to
obtain a just and reasonable return for the investment made;
that on November 3, 1902, they adopted a new set of by-laws
conferring upon the board of directors the right to fix a sched-
ule for annual charges for sewer service; that they there-
after adopted the schedule adopted in the answer, and that
such charges are reasonable, just and proper. The defend-
ant admits that it did undertake to raise the rental for the use
of the sewerage system, as alleged, and that such rates are
much lower than many other cities in the United States, and
as a comparison with the rates of a number of other cities an
exhibit is attached to the answer. The defendant admits that
it served notice upon the plaintiffs that unless payment was
made in accordance with the new rates, it would disconnect
them, as it claimed it had the right to do. It admits that
the plaintiffs tendered to the defendant the old rate that the
plaintiffs were paying. It denies that the rates charged the
plaintiffs are discriminating, and alleges that they are uni-
form and without discrimination in favor of or against any
person. The defendant further says that when the company
was granted the right to sewer the city the State Board of
Health and the Board of Health of the city annexed as a con-
dition of its approval of the new system of sewerage that no
part of the old sewers of the company, with which the plain-
tiffs were connected, should be used; that the pipes were not
laid with the proper fall, and were frequently obstructed and
became unsanitary; that upon the completion of the new sys-
tem the defendant disconnected the plaintiffs with the old

sewers and connected them with the new sanitary sewers. The answer has attached the rules and regulations, showing the charges, etc., also a schedule showing the comparative charges in other cities for sewerage.

Upon the hearing of a motion to continue the restraining order the Court continued the same to the hearing, providing that the plaintiffs should pay such rents and tolls as they had agreed to pay, and giving the defendants permission to move to vacate the order upon their failure to do so. From this order the defendants appealed.

In the argument before us quite a number of interesting questions were presented, several of which we do not think it necessary to consider or pass upon at this time. No affidavits were filed either in support of the complaint or answer, and his Honor found no facts in regard to the controverted matters. The defendant insists, or contends, that admitting the facts set out in the complaint to be true, the plaintiffs are not entitled to injunctive relief, for that the threatened breach of the contract would inflict no irreparable injury upon them. That such injury, if any, that they might sustain could be compensated in damages. This is an action for a special, as distinguished from a common, injunction, as pointed out in *Heilig v. Stokes,* 63 N. C., 612, *Rodman, J.,* saying: "The injunction is special in its nature. In such case the practice is to continue it, if in the opinion of the Court it appears reasonably necessary to protect the rights of the plaintiff, until the trial." *Pearson, J.,* in *Purnell v. Daniel,* 43 N. C., 9 says: "This is not the case of an ordinary or common injunctive relief is based upon two allegations: first, that is the point in the cause; it is to prevent irreparable injury (as is alleged) and to dissolve the injunction, besides the case; for to dissolve it, allows the act to be done. * * * To dissolve the injunction before hearing the cause on the proof, the defendant must show that the plaintiff has no case

fit to be heard; and if, from the answer, it appears that there is any question of doubt on a matter that should be further inquired into, the injunction will be continued to the hearing." *Lowe v. Commissioners,* 70 N. C., 532; *Blackwell v. McElwee,* 94 N. C., 425. The plaintiffs' ground for asking injunctive relief is based upon two allegations; first, that that to raise an annual rental for the use of the sewer would be a breach of the contract between themselves and the defendant, and second, that the new rental charge is unreasonable and exorbitant, and that they are not only unjust and unreasonable, but are discriminating in that some of the patrons have been offered more advantageous terms and more reasonable rates than those exacted from the plaintiffs. Both allegations are denied. If the latter be true, it is clear that the plaintiffs are entitled to an injunction until the facts can be ascertained. In *Griffin v. Water Co.,* 122 N. C., 206; 41 L. R. A., 240, this Court held that upon an allegation of this kind an injunction should be continued till the final hearing. It is clear that the defendant is engaged in a business in which the public have an interest, and that the acceptance of the franchise carries with it the duty of supplying sewerage to all persons along the line of its mains without discrimination and at uniform rates. The defendant says that the contract set out by the plaintiffs is incapable of specific performance, because, no time being fixed for its continuance, it was determinable at the will of either party, and that the defendant's charter allowed it to make rates from time to time, and that said contract was made with reference to and in view of this power in the board of directors. The defendant further says that the contract is against public policy, for that "a private corporation whose business is of a public character and which owes peculiar duties to the public can make no contract which will have the effect of disabling it, even partially, from performing such duties—such a contract is con-

trary to public policy and void." The defendant further says that the contract is void because there is no mutuality, there being no obligation on the part of the plaintiffs to use the sewer and pay the rental for any definite time. These contentions present interesting questions, the decision of which is dependant upon the findings of fact in regard to the controverted questions raised by the pleadings, and we do not at this time deem it wise to express any opinion upon them further than is necessary to dispose of this appeal. In Spelling on Injunctions and Extraordinary Remedies, sec. 504, it is said: "It needs no argument or authority to support the proposition that a violation of a contract to furnish a supply of water for use or consumption may inflict irreparable injury. * * * On the same principle, evidence other than that necessarily apparent from a statement of the case is usually not required in support of an injunction against the attempted breach of a contract to furnish water. And as a court of law cannot prevent destruction of the owner's use of the water, he need not resort to his action for damage, but may seek relief in equity, and the destruction being a palpable breach of contract, he need not show that irreparable injury would result. On the same ground of preventing irreparable injury, an injunction lies to prevent a water-works company from cutting off its water supply, where the consumer has offered to pay in advance the proper amount for the use of the water during the year, and the company claims a higher rate than is really true and exigible." The law as thus laid down is sustained by the authorities. In *Xenier Real Estate Co. v. May*, 47 N. E. Rep. (Ind.), 147, the plaintiff alleged that it had made a contract upon valuable consideration by which the plaintiff was to furnish gas sufficient for the purpose of operating an electric light plant so long as the latter would supply gas. The Court said that the contract was sufficiently definite and used the following lan-

guage: "We think the complaint not only states facts suffi-
cient to enable appelle to damages, but also to an injunction."
In *Graves v. Key City Gas Co.,* 50 N. W. Rep. (Iowa),
283, the plaintiff alleged that he had made a contract with the
defendant company to furnish gas free of charge for twenty
years for all ordinary purposes in his dwelling.   The defend-
ant threatened to cut off the connection between his residence
and its pipes.   In response to the suggestion that the threat-
ened injury could be compensated in damages the Court said:
"If the defendant may withhold the supply of gas, the plain-
tiff may obtain it from no other existing source, for the de-
fendant, it appears, has, in effect, at the present, a monopoly
of the right to furnish gas to private consumers, such as .the
plaintiff.   His gas pipes and gas burners and fixtures would
be useless and valueless and he would be deprived of gas-
light, which, to a certain extent, is regarded by housekeepers
using it as a necessity and a source of comfort.   As the plain-
tiff can supply his dwelling, outhouses and street lamps in no
other way, this injury cannot be repaired.   If the defendant
supplies him with no gas, he must do without it and the com-
fort it brings.   It is, therefore, irreparable.   It is true he
could use candles, oil or electricity, but he contracted for gas
light and is entitled to it.   It will not do to say he may have
compensation in damages.   It would be difficult, if not impos-
sible, to estimate his damage.   If it might be done, there
would be delay in compensation, subjecting the plaintiff to
discomfort, inconvenience and loss for probably a protracted
period.   Equity will not permit one to be deprived of his
right in this way by the violation of a contract, but by injunc-
tion will interfere to prevent it."   *Hendricks v. Hughes,* 117
Ala., 591.   The reasoning in this and other cases holding a
like doctrine is very much stronger when applied to a sewer-
age system connected with a dwelling.   It becomes not only
a matter of comfort and convenience, but seriously affects

the health of the family.   We must take notice of the fact
that when one has placed in his residence a connection with a
sewer and placed pipes and other attachments necessary for
its use, to deprive him of the privilege of discharging the
sewage into the pipes provided for that purpose would seri-
ously affect the comfort, if not the health, of those occupying
the dwelling.   We cannot doubt that if the plaintiffs shall
ultimately establish their contention in respect to their con-
tractual rights against the defendant, they shall have a per-
petual injunction for the protection of such rights.

While we express no opinion in regard to the ultimate
result of the litigation in the absence of any evidence or find-
ings of fact by the Court below, we think that upon well set-
tled principles of equity jurisprudence the *status quo* should
be maintained during the litigation.

Whether the plaintiff shall be entitled to specific per-
formance of the contract, and for what length of time the
contract shall exist, and to what extent it might be in the
power of the defendant corporation to perform the contract
without impairing or destroying its power to perform its
duties to the public, or whether the rates now charged are
unreasonable or discriminating, are all questions to be deter-
mined upon the facts as they may be found by some compe-
tent tribunal upon the final hearing.

We think that his Honor correctly continued the injunc-
tion to the hearing, and the judgment in that respect is
    Affirmed.