° ATLANTIC REFINING COMPANY *vs.* JOHN DUDEK.

DECEMBER 30, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is an appeal from a final decree of the Superior Court enjoining the respondent during the unexpired term of an agreement from purchasing or distributing gasoline and other petroleum products except such products be purchased from complainant. The suit is before us on respondent's appeal from this decree on the ground that it is against the law, the evidence and the weight thereof. Respondent's contention that the agreement upon which the suit is based is unenforceable in equity for lack of mutuality is decisive of the appeal and renders consideration of the other reasons of appeal unnecessary.

So much of the agreement—between complainant as party of the first part and respondent as party of the second part—as is necessary to an understanding of the basis of respondent's contention of lack of mutuality follows: "The party of the first part, in consideration of the party of the second part purchasing all gasoline, motor fuels, motor oils and greases . . . solely from the party of the first part, at the party of the first part's following specified prices, prevailing in the town or city in which said land is located: all gasoline and motor fuels at tank wagon price to dealers, all motor oils and greases as per schedule of prices to dealers; hereby agrees to furnish and lend to the party of the second part . . . (and install) a complete system for retailing gasoline (etc.) . . . It is agreed that the system shall at all times remain the property of the party of the first part; and . . . shall be operated and used along with the said piece of land first above described, by the party of the second part, during the continuance of this agreement or any extension thereof, only for the purpose of handling and dispensing gasoline (etc.) . . . purchased from the party of the first part; and that, at the expiration of this agreement . . . said system shall be turned over to the party of the first part in good order and condition.

It is further agreed that if the party of the second part shall at any time cease to purchase all gasoline (etc.) . . . from the party of the first part; or fail to pay promptly on demand . . . or attempt to or actually handle or dispense . . . any gasoline (etc.) . . . purchased from any other party . . . or fail to operate said system daily . . . or fail to purchase at least 30,000 gallons of gasoline or motor fuels and 1,500 gallons of motor oils yearly from said party of the first part; . . . or in any other way the said party of the second part shall fail to keep or perform the terms of this agreement; then, and in such case, the said party of the second part . . . is hereby declared to be in default hereunder, and the party of the first part may, immediately or thereafter, at its option, without notice to the party of the second part, take immediate possession of the said system and remove the same . . . ."

A careful examination of the agreement in question discloses no provision whatsoever requiring the complainant to sell or furnish the respondent with any gasoline, motor fuels, motor oils or greases. In other words the complainant could, at will and without giving notice or committing any breach of the contract, refuse to sell to the respondent any of the aforesaid products. The only thing it agreed to furnish the respondent was a system as stated in the agreement, and at the end of the term this system was to be turned over to the complainant in good order and condition.

Respondent, on the other hand, was obliged under the terms of the agreement to purchase solely from the complainant all gasoline, motor fuels, motor oils or greases handled and dispensed from his land for the entire period of the contract. In the event that he failed to do so or failed to do any one of many other things therein provided, including the purchasing of at least 30,000 gallons of gasoline and 1,500 gallons of motor oils yearly, the complainant could remove the system and make the respondent pay $1,270, or respondent could retain the system and pay $1,905.

Such an agreement makes out a case of lack of mutuality. As to the main subject of the contract—the furnishing of products by the complainant and the buying and dispensing of them by the respondent—the complainant was not bound to do anything, while the respondent must buy large quantities or pay liquidated damages for not doing so.

"The injustice of enjoining one party to a contract from its violation is too manifest for discussion when it is uncertain to what extent the obligations of the other party go in order for him to perform it." Lawrence on Equity Jurisprudence, Vol. 1, § 290.

This court has stated its position on the question of lack of mutuality in the case of *Smart* v. *Boston Wire Stitcher Co.*, 50 R. I. 409, where the complainant sought an injunction which would amount to specific performance. The court held that the same rules applied to such a case as to one where specific performance was affirmatively sought, and held that this remedy was a matter of discretion, to be exercised only after a careful consideration of the evidence. The court at p. 415 said: "the question of mutuality goes to the equity of the bill, and if there is lack of mutuality of remedy the bill must fail and the principle of the balance of convenience does not apply." See also *Solomon* v. *Wilmington Sewerage Co.*, 133 N. C. 144; *Fowler Utilities Co.* v. *Gray*, 168 Ind. 1, 79 N. E. 897; *Adams* v. *Iowa Gas & Electric Co.*, 200 Iowa 782, 203 N. W. 229; in which cases relief was denied through lack of mutuality of obligation.

The complainant in its brief and in the argument before this court admitted that there was no express promise on its part to sell its products to the respondent but contended that the tenor of the contract indicated that there was an implied promise on its part to sell. In *Smart* v. *Boston Wire Stitcher Co.*, *supra*, this court held that: "A court of equity will not read into a contract conditions which do not appear in the contract itself so as to make the contract enforceable by affirmative decree."

48

The appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the Superior Court with direction to enter a final decree dismissing the bill.

*Comstock & Canning, Andrew P. Quinn,* for complainant.
*William W. Moss, W. Vincent Sumpter, Harry A. Tuell,* for respondent.