**AUSTIN et ux.**

v.

**CITY OF LOUISA et al.**

Court of Appeals of Kentucky.

Feb. 5, 1954.

M. J. See, Louisa, for appellants.

Eldred E. Adams, C. L. Miller, Louisa, for appellees.

MILLIKEN, Justice.

Appellants, W. F. Austin and Sophia Austin, his wife, filed this suit for a declaration of rights against the City of Louisa, the Louisa Water Commission, and three individuals, Lonnie Boggs, H. T. Kerns and Con Limmings. They sought to have the trial court determine whether either the City of Louisa or the Water Commission had any responsibility in their failure to continue supplying them with water, and whether the individual appellees have subjected themselves to regulation by the Public Service Commission in the operation of a certain private water line which they constructed at their own expense for approximately $1,500.

Appellee, City of Louisa, filed a special demurrer which the trial court sustained. The individual members of the Board of Water Commissioners of Louisa filed a motion to quash service of summons and dismiss the case as to them. This also was sustained. Proof was taken after answer by Boggs and his associates, and the trial court rendered judgment dismissing appellants' petition. In doing so, the court ruled that Boggs, Kerns and Limmings were not operating a "public utility."

The appellees, Lonnie Boggs, H. T. Kerns and Con Limmings, and the appellants own homes on State Route No. 3, the Inez Road, just east of the City of Louisa. The particular area is a "V" shaped piece of land formed by the confluence of the Levisa and Tug Forks of the Big Sandy River. Some time in September, 1949, the appellees Boggs, Kerns and Limmings built a private water line from their homes across the Levisa Fork of the Big Sandy to a water main inside the city limits of Louisa. The line is of limited capacity, being only two inches in diameter at the river. When it had been completed, the three appellees began using city water, and meters were installed at their homes by city employees and regular city retail rates were charged for the water used.

Subsequently, Boggs and his associates permitted neighbors to tap onto the line in question, until at the time this action was brought approximately twenty-two people in all were using it. Each neighbor who tapped onto the line paid the original builders $100 and signed a contract whereby he or she agreed not to hold the original builders responsible for loss of service. In addition, each person agreed to share the expense of maintenance.

The troublesome situation in this case arose after a Mr. Griswold paid the $100, signed the contract and constructed a tap line from the original one to his house. This tap line lay on the highway right-of-way, and passed directly in front of the appellants' home. Griswold put a connection in his line in front of the Austin house and they also tapped on. It is insisted this was done with the permission of Boggs and the others who had constructed the line, but they deny their acquiescence. At any rate, the city employees placed a meter at the appellants' home. It remained there for about two months during which the appellants paid the city for the water they used.

An attempt was made to induce the appellants to sign the contract which the other neighbors had signed, but they refused to sign it. In the meantime, the Griswold home became unoccupied and Boggs and his associates gave the Austins ten days' notice by registered mail to sign the contract or have the water turned off. With the consent of Griswold, Boggs and his associates placed a valve at the point of connection between the Griswold and Boggs line and thereby shut off the water, and city em-

ployees subsequently removed the meter from the appellants' home.

Soon the Griswold property was rented and the water again turned into the tap line. About December 15, 1949, the appellants' tendered a check for $100 to Boggs. The check bore the notation: "Tap fee on water line, no other fee to be collected on this now or forever, fee for line." The check was returned. A short time later it was discovered that the Austins had inserted a short pipe or "jumper" into the Griswold line. They admitted using water for several days without paying anyone for it. The jumper was removed. In July, 1951, the Austins installed a new bathroom in their home. Within four months, no agreement having been reached by the parties, this action was commenced by the Austins.

Under the facts as we have recited them, we can come to no other conclusion than that the trial court was correct in the rulings it made against appellants.

■ Appellants acquired no rights against the City of Louisa, merely by reason of the fact that a meter was installed in their home, and they were permitted to purchase city water for a short period of time. A municipally owned water company may extend its distribution system beyond the city limits, KRS 96.150, but in the case at bar it did not do so. It merely sold water to individual users outside the city, something it was empowered to do by statute, KRS 96.130, but not required to do.

■ Any rights appellants may have had to receive water depended necessarily upon the willingness of Boggs, Kerns and Limmings to permit appellants to tap onto the private line. Any permission which may have been granted was revoked when appellants refused to sign the contract. Since Boggs and his associates were within their rights in refusing to permit appellants to continue using the line, it follows that the city could furnish no water to appellants unless the latter built their own private line. The city could not be required to supply them.

■ Nor do we feel that appellants have any grievances against Boggs, Kerns and Limmings which are cognizable at law. Clearly, the latter persons are not, as appellants contend, operating a public utility so as to bring them within the regulatory jurisdiction of the Public Service Commission. The fee of $100 and the additional conditions in the contract, signed by some twenty or more neighbors who were permitted to use this limited line, represent a reasonable means of spreading the cost of construction and maintenance of the line. Moreover, the three men have meters installed in their homes and pay the city for the water used by them, just as any user within the city would be required to do. It is obvious that this is not a case of the distribution of water "for compensation" by Boggs and associates, KRS 278.010 (d), as would make the Boggs line a public utility.

Aside from this contention, however, appellants attempted to prove that Boggs, Kerns and Limmings agreed in advance to let them use water from the Griswold tap line at a flat fee of $100 and without any other conditions. The trial court rejected appellants' contention on this score when it dismissed the petition. In view of the conflict of evidence, we cannot say the trial court was in error. In the final analysis, the appellants again were not entitled to any relief.

■ By ordinance, the City of Louisa established a "Board of Water Commissioners." The present action was brought against the "Louisa Water Commission," but assuming the "Board of Water Commissioners" was intended, this appellee was properly dismissed from the case because, not being a body corporate, its three individual members should have been named in order to bring the Board before the court.

The judgment is affirmed.