STATE OF NORTH CAROLINA EX REL. NORTH CAROLINA UTILITIES COMMISSION v. NEW HOPE ROAD WATER COMPANY, AND L. L. Mc-LEAN, d.b.n. McLEAN COMMUNITY WATER SYSTEM.

(Filed 19 March, 1958)

1. **Utilities Commission § 5—**

On appeal from the Utilities Commission the courts have jurisdiction to determine whether the Commission had statutory authority to entertain the proceedings and jurisdiction to enter the order. G.S. 62-26.10.

2. **Utilities Commission § 2—    Sale of right to tap into private water main for service by municipality does not constitute owner a public utility.**

Respondents constructed a water main from the end of the municipal lines to their properties for better use of such properties and also permitted others to tap into the lines laterally upon the payment of a fee, and the municipality, upon written statement that the right to tap in had been purchased, installed meters and furnished water to the purchasers direct, respondents owning no laterals between the point where the taps were made in their lines and the residences or other buildings served thereby: *Held:* Respondents were not selling water to any one, at any time, for compensation or otherwise, and were not public utilities within the meaning of G.S. 62-65 ('e) 2, and therefore the Utilities Commission had no jurisdiction to order respondents to improve their facilities so as to provide an adequate supply of water.

APPEAL by the Utilities Commission from *Froneberger, J.,* at Chambers in Gastonia, North Carolina, 24 October 1957. From GASTON.

This is an appeal from a judgment rendered by his Honor P. C. Froneberger, Resident Judge of the Twenty-Seventh Judicial District, reversing an order of the North Carolina Utilities Commission (hereinafter called Commission), requiring the respondents to apply to the Commission for a Certificate of Public Convenience and Necessity and to enlarge and improve their facilities for furnishing water to the general public.

The facts pertinent to this appeal are as follows:

1. The New Hope Water Company (hereinafter called New Hope) is a corporation formed over thirty years ago by sixteen families residing on the New Hope Road, southeast of the city limits of Gastonia. The corporation was originally formed by these families for the purpose of constructing a 6-inch water line from the corporate limits of the City of Gastonia along the New Hope Road to the North Carolina Orthopedic Hospital. New Hope later built several lateral lines extending from its 6-inch line. Shortly after the 6-inch line was installed, the corporation installed from the end of its 6-inch line, which ended at what is known as Armstrong Circle, a real estate development located across the New Hope Road from the Orthopedic Hospital, a 2-inch line to the E. P. Lewis Property, which property lies between the Orthopedic Hospital and the property referred to here-

inafter as the McLean property. New Hope for many years sold taps at $150.00 each; later the tap fee was reduced to $100.00 each. New Hope expended approximately $18,000 to $20,000 in constructing its lines and has had no income except from the sale of taps. It now has a surplus of approximately $2,000.

2. About 25 or 30 years ago, R. C. McLean, the father of the respondent L. L. McLean, trading as McLean Community Water System (hereinafter called McLean), paid New Hope $500.00 for the right to extend the 2-inch line from the Lewis property to his own premises, a distance of approximately one mile. Between the Lewis property and the end of the McLean 2-inch line, there are 32 houses, all of which have tap-ins on the McLean line. With the exception of about two houses, which were built before the death of R. C. McLean, L. L. McLean either built the houses and put the water in them or sold tap-ins along the line in order that the people might have water service. McLean has had no income from his line except from the sale of taps for which he has charged $150.00 each. His line cost approximately $5,000.

3. It has been the uniform practice of New Hope and McLean to give the purchaser of a tap a statement or letter to that effect, which the purchaser used in applying to the City of Gastonia for the installation of the tap and the meter. The City of Gastonia has made these installations, furnished water to the purchasers, and collected for it monthly. These respondents own no line or laterals between the point where the taps are made in their respective lines and the residences or other buildings served pursuant thereto.

4. The evidence in the hearing before the Utilities Commissioner pursuant to the order to show cause, supports the findings of fact of the Commissioner (1) that New Hope and McLean have sold tap-ins to all applicants applying therefor; (2) that the water lines of these respondents are not sufficient to furnish the purchasers of the taps sold by them an adequate supply of water; and (3) that the inadequacy of the pipeline facilities has created a serious health problem among these water users.

Other crucial findings of fact are as follows:

(a) That New Hope "is a corporation and owns pipeline facilities extending along New Hope Road eastwardly from the City of Gastonia to the Perry Lewis farm, a distance of approximately two miles, with certain laterals extending therefrom, for furnishing water to the general public for compensation. * * *"

(b) McLean "is now, and has been for many years, the owner of water mains or pipeline facilities extending along New Hope Road east of Gastonia from the Perry Lewis farm eastwardly for a distance of more than one mile, and a lateral from said line southwardly from

New Hope Road along McLean Avenue, a distance of several hundred feet, for furnishing water to the general public for compensation."

The Commissioner concluded as a matter of law that both New Hope and McLean are public utilities within the meaning of GS 62-65(e) and recommended that they be ordered to apply to the Utilities Commission for Certificates of Public Convenience and Necessity as required by law, and further recommend that they "forthwith and within 90 days from the date of this order enlarge and improve their facilities for furnishing water to the general public for compensation to the extent that such facilities will provide an adequate supply of water to meet the needs and requirements of the customers receiving water from said facilities and will remove any danger or threat to the health of the water users from these facilities."

The Commission entered an order accordingly. The respondents filed exceptions to the pertinent findings of fact, conclusions of law and to the order, which were overruled, and they appealed to the Superior Court upon similar exceptions.

Judge Froneberger heard this matter in Chambers on the exceptions of the respondents, and each of them. His Honor sustained the exceptions and reversed the order of the Commission; and further held that the facts found by the Commission and excepted to by the respondents do not constitute these respondents public utilities as defined in the Statutes of North Carolina, and dismissed the proceeding. The Commission appeals, assigning error.

*Attorney General Patton, Asst. Attorney General F. Kent Burns, for the State, appellant.*

*Wm. H. Abernathy, Henry Whitesides, for defendant McLean, appellee.*

*Hugh W. Johnson, for defendant, New Hope, appellee.*

DENNY, J. The sole question for decision on this appeal is whether or not the respondents are public utilities within the meaning of GS 62-65(e) 2, which reads as follows: "The term 'public utility,' when used in this article, includes persons and corporations, or their lessees, trustees and receivers now or hereafter owning or operating in this State equipment or facilities for: Diverting, developing, pumping, impounding, distributing or furnishing water to or for the public for compensation."

The Commission has no jurisdiction over these respondents unless they are public utilities within the meaning of GS 62-65(e) 2. GS 62-27. Moreover, the General Assembly has vested in the courts of this State the power to review proceedings before the Commission and to determine whether or not the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are, among other things, in excess of the statutory authority or jurisdic-

tion of the Commission; or unsupported by competent, material and substantial evidence. GS 62-26.10.

While it is apparent from the evidence that these respondents have sold taps to all persons applying therefor, they had no choice in the matter if they are public utilities. *Halifax Paper Co. v. Sanitary District,* 232 N.C. 421, 61 S.E. 2d 378.

In the last cited case, it is said: "A public utility, whether publicly or privately owned, 'is under a legal obligation to serve the members of the public to whom its use extends, impartially and without unjust discrimination * * * A public utility must serve alike all who are similarly circumstanced with reference to its system, and favor cannot be extended to one which is not offered to another, nor can a privilege given one be refused to another.' 43 Am. Jur., 599; 51 C.J., 7. This is in accord with our decisions. *Public Service Co. v. Power Co.,* 179 N.C. 18, 101 S.E. 593; *Solomon v. Sewerage Co.,* 133 N.C. 144, 45 S.E. 536; *Griffin v. Water Co.,* 122 N.C. 206, 30 S.E. 319."

In 73 C.J.S., Public Utilities, section 2, page 993, it is said: "It has been stated that the true criterion by which to determine whether a plant or system is a public utility is whether or not the public may enjoy it of right or by permission only *(Johnson City v. Milligan Utility District,* 38 Tenn. App. 520, 276 S.W. 2d 748; *Junction Water Co. v. Riddle,* 108 N.J.Eq. 523, 155 A 887; *Richardson v. Railroad Commission,* 191 Cal. 716, 218 P 418; *Springfield Gas Co. v. Springfield,* 292 *Ill.* 236, 127 N.E. 739) * * * and an attempt to declare a company or enterprise to be a public utility where it is inherently not such, is, by virtue of the guaranties of the federal Constitution, void wherever it interferes with private rights of property or contract * * * and the question whether or not a particular company or service is a public utility is a judicial one which must be determined as such by a court of competent jurisdiction." *Natatorium Co. v. Erb,* 34 Idaho 209, 200 P 348.

The case of *Austin, et al v. City of Louisa* (Court of Appeals of Kentucky), 264 S.W. 2d 662, was filed for a declaration of rights against the City of Louisa, the Louisa Water Commission, and three individuals, Lonnie Boggs, H. T. Kerns and Con Limmings. The individuals, Boggs, Kerns and Limmings, as well as the plaintiffs, owned homes on Inez Road, just east of the City of Louisa. Some time in 1949 the appellees, Boggs, Kerns and Limmings, built at a cost of $1,500 a private water line from their homes to a water main in the City of Louisa.

Subsequently, Bobbs and his associates permitted neighbors to tap onto the line in question, until at the time the action was brought approximately 22 families in all were using it. Each neighbor who tapped onto the line paid the original builders $100.00 and signed a contract whereby he or she agreed not to hold the original builders responsible

for loss of service. In addition, each person agreed to share the expense of maintenance. The taps and meters were installed by the Water Department of the City of Louisa. The City of Louisa sold water through the private line and collected therefor.

A Mr. Griswold paid the $100.00, signed the contract and constructed a tap line from the original one to his house. He then permitted the plaintiff Austin to tap his lateral line and obtain service without paying the tap fee of $100.00 or signing the contract required by the original builders of the line. The Court said: "Any rights appellants may have had to receive water depended necessarily upon the willingness of Boggs, Kerns and Limmings to permit appellants to tap onto the private line. * * *

"Nor do we feel that appellants have any grievances against Boggs, Kerns and Limmings which are cognizable at law. Clearly, the latter persons, are not, as appellants contend, operating a public utility so as to bring them within the regulatory jurisdiction of the Public Service Commission. The fee of $100 and the additional conditions in the contract, signed by some twenty or more neighbors who were permitted to use this limited line, represent a reasonable means of spreading the cost of construction and maintenance of the line. Moreover, the three men have meters installed in their homes and pay the city for the water used by them, just as any user within the city would be required to do. It is obvious that this is not a case of distribution of water 'for compensation' by Boggs and associates, KRS 278.010(d), as would make the Boggs line a public utility."

Section 278.010, Kentucky Revised Statutes, reads as follows: "(3) 'Utility' means any person, except a water district organized under Chapter 74 or a city, who owns, controls, operates or manages any facility used or to be used for or in connection with: (d) The diverting, developing, pumping, impounding, distributing, or furnishing of water to or for the public, for compensation." The legal effect of this statute is identical with our own.

In *Overlook Development Co. v. Public Service Commission*, 101 Pa.Super.Ct. 217, 306 Pa. 43, 158 A 869, it was held that a land company which plotted a tract of land owned by it for development purposes, sold lots and contracted with a water company for a supply of water through the main constructed by the land company at its own expense and owned by it, did not engage in the business in supplying water to the public by reason of the fact that it permitted those to whom it sold lots and several neighboring owners to connect with its main and be served with water through it by the water company. The Court further held: " * * * The mere fact that this water main became a facility of the water company did not destroy the private character of the main, nor render it subject to use by the water com-

pany in supplying water to the public generally, or to any portion of the public as such. If this be not so, then one cannot construct a water main on his own land, connect it with a main of a public service company, and receive service through it from the company without impressing it with a public use which would require him to permit any other person in the neighborhood who might desire service from the company, to connect with his main. * * * A public utility may be compelled under proper circumstances to extend its facilities to accommodate the public, but the private property of an individual cannot be appropriated for that purpose without due process and without making or securing compensation." See Anno: Public Utility—Incidental Service, 18 ALR 764; 93 ALR 248; 132 ALR 1495. Cf. *Allen v. Railroad Commission,* 179 Cal. 68, 175 P 466.

In our opinion, the mere fact that these respondents own the respective water lines or mains described hereinabove, and that such lines are used by the City of Gastonia for selling water for compensation, does not support the findings of fact to the effect that the respondents are engaged in selling water to the general public for compensation within the meaning of GS 62-65(e) 2, and are, therefore, public utilities. The respondents have not sold water to any one, at any time, for compensation or otherwise. Moreover, the City of Gastonia can only furnish water service through these private lines to a party who has purchased a tap from the owners thereof. The City has no right to sell a tap on these lines, neither does it have the right to install one without permission of the respective owners thereof. Consequently, we hold that these respondents are not public utilities within the meaning of the provisions of the above statute. Hence, the judgment of the court below is

Affirmed.