MURPHY, Judge.
*614 Plaintiff North Carolina Waste Awareness and Reduction Network ("NC WARN") appeals from an order of the North Carolina Utilities Commission (the "Commission") concluding that NC WARN was operating as a "public utility," subject to the Commission's jurisdiction, when it entered into an agreement with a Greensboro church (the "Church") to install and maintain a solar panel system on the Church's property and to charge the Church based on the amount of electricity that the system generated. The Commission also concluded that NC WARN's actions constituted a provision of "electric service" to the Church, infringing on the utility monopoly of Duke Energy Progress, LLC, and Duke Energy Carolinas, LLC, (collectively "Duke Energy") in violation of *714 Chapter 62 of the North Carolina General Statutes. *615 We agree and conclude that NC WARN is acting as a "public utility" by operating its system of solar panels for the Church on the Church's property. Therefore, we affirm the order of the Commission.
Background
In December 2014, NC WARN entered into a "Power Purchase Agreement" (the "Agreement") with the Church. The Agreement provided that NC WARN would install and maintain a system of solar panels on the Church's property. Under the Agreement, the solar panels would "remain the property of NC WARN" and the Agreement did not "constitute a contract to sell or lease" the solar panels to the Church. In exchange, the Church agreed to compensate NC WARN based on the amount of "electricity produced by the system" at a rate of $0.05 per kWh.
In June 2015, NC WARN filed a request with the Commission for a declaratory ruling that its proposed activities under the Agreement would not cause it to be regarded as a "public utility" pursuant to the Public Utilities Act (the "Act").
The Commission, however, concluded that NC WARN's arrangement with the Church constituted a public utility in violation of the Act. In addition, the Commission ordered that NC WARN refund its charges to the Church and pay a fine of $200 for each day that NC WARN provided electric service to the Church through the solar panel system.[1] NC WARN timely appealed the Commission's order.
Analysis
The dispositive issue on appeal is whether the Commission correctly determined that NC WARN was operating as a "public utility." See State ex rel. N.C. Utils. Comm'n v. New Hope Rd. Water Co. , 248 N.C. 27, 29, 102 S.E.2d 377, 379 (1958) ("The Commission has no jurisdiction over these respondents unless they are public utilities within the meaning of [the Public Utilities Act]."). This issue is a question of law, which is reviewed de novo by our Court. N.C.G.S. § 62-94(b) (2015) ("[T]he court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions."); New Hope , 248 N.C. at 30, 102 S.E.2d at 379 ("[T]he question of whether or not a particular company or service is a public utility is a judicial one which must be determined as *616 such by a court of competent jurisdiction."); State ex rel. Utils. Comm'n v. Envir. Defense Fund , 214 N.C. App. 364, 366, 716 S.E.2d 370, 372 (2011) ("Questions of law are reviewed de novo .").
The Public Utilities Act, found in Chapter 62 of our General Statutes, gives the Commission the power to supervise and control the "public utilities" in our State. N.C.G.S. § 62-30 (2015). A "public utility" as defined in the Act is any entity which owns and operates "equipment and facilities" that provides electricity "to or for the public for compensation." N.C.G.S. § 62-3(23)(a) (2015).
In the present case, there is no doubt that NC WARN owns and operates equipment (a system of solar panels) which produces electricity and that NC WARN receives compensation from the Church in exchange for the electricity produced by the system. The dispute here is whether NC WARN is producing electricity "for the public," therefore, making it a "public utility."
"The public does not mean everybody all the time." State ex rel. Utils. Comm'n v. Simpson , 295 N.C. 519, 522, 246 S.E.2d 753, 755 (1978) (holding that the defendant was offering his two-way radio communication service to "the public" even though he was offering the service exclusively to members of the Cleveland County Medical Society, which was comprised of only 55 to 60 people) (citation omitted). Instead:
One offers service to the 'public' within the meaning of [ N.C.G.S. § 62-3(23)(a)(1) ] when he holds himself out as willing to serve all who apply up to the capacity of his facilities. It is immaterial, in this connection, that his service is limited to a specified area and his facilities are limited in capacity. For example, the operator of a *715 single vehicle within a single community may be a common carrier.
State ex rel. Utils. Comm'n v. Carolina Tel. & Tel. Co. , 267 N.C. 257, 271, 148 S.E.2d 100, 111 (1966) (offering his mobile radio telephone service in the Kinston area to an anticipated 33 subscribers). However, this framework "is merely the beginning and not the end of our inquiry[,]" as a person might still be offering his services to the "public" even when he serves only a selected class of persons. Simpson , 295 N.C. at 525, 246 S.E.2d at 757. In further deconstructing the definition of "public," within the context of a selected class of consumers our Supreme Court instructed that whether an entity or individual is providing service to the "public":
depends ... on the regulatory circumstances of the case ... [including] (1) nature of the industry sought to be *617 regulated; (2) type of market served by the industry; (3) the kind of competition that naturally inheres in that market; and (4) effect of non-regulation or exemption from regulation of one or more persons engaged in the industry.
Id. at 524, 246 S.E.2d at 756. This interpretation is meant to be flexible so as to adjust according to "the variable nature of modern technology," and, ultimately, the touchstone of our analysis is: what "accomplish[es] the legislature's purpose and comports with its public policy." Id. at 524, 246 S.E.2d at 757 (citation and internal quotation marks omitted).
i. The Simpson Factors
In the instant case, NC WARN seeks "to provide affordable solar electricity to non-profits." If we uphold the Agreement NC WARN has in place with the Church, NC WARN would like "to provide similar projects to other non-profits in the future." In that way, NC WARN serves, or seeks to serve, a subset of the population, just as the defendant did in Simpson . Therefore, in order to evaluate whether this activity violates the Act, we must consider the factors outlined by our Supreme Court.[2]
Discussion of (1) the nature of the industry and (2) type of market served by the industry overlap. The Greensboro area has been assigned exclusively to Duke Energy, just as other regions of the state are exclusively assigned to other electricity suppliers. North Carolina law precludes retail electric competition and establishes regional monopolies on the sale of electricity based on the premise that the provision of electricity to the public is imperative and that competition within the marketplace results in duplication of investment, economic waste, inefficient service, and high rates. Carolina Tel. & Tel. Co. , 267 N.C. at 271, 148 S.E.2d at 111 ("[N]othing else appearing, the public is better served by a regulated monopoly than by competing suppliers of the service."). In particular, although the provision of electricity might be lucrative in some areas, it may also be costly in others. Monopolies exist *618 in North Carolina so that it makes financial sense for utilities to serve all North Carolinians and so that service can be provided at a reasonable price. See Simpson , 295 N.C. at 525, 246 S.E.2d at 757 (recognizing that exempting certain radio service providers from regulation would "leave burdensome, less profitable service on the regulated portion resulting inevitably in higher prices for the service").
For these reasons, the legislature has elected to prohibit (3) any competition that might otherwise naturally exist in the market and to limit providers of electricity to specific providers in different regions of the state. Id. at 271, 148 S.E.2d at 111. NC WARN's activities *716 are in direct competition with Duke Energy's services, as both entities are selling kilowatt hours of electricity to Duke Energy's customers.
Perhaps most importantly to our review of this case, however, is an evaluation of (4) the effect of non-regulation or exemption from regulation of one or more persons engaged in the industry. NC WARN maintains that it only intends to provide its services "to self-selected non-profit organizations" and has no desire to offer its services to all of Duke Energy's customers.[3] However, the Supreme Court of North Carolina previously rejected this same argument in Simpson when the defendant argued that he was spared from regulation because he only endeavored to provide his services to the Cleveland County Medical Society. 295 N.C. at 525, 246 S.E.2d at 757. In that case, the Supreme Court concluded, "[w]ere a definition of 'public' adopted that allowed prospective offerors of services to approach these separate classes without falling under the statute, the industry could easily shift from a regulated to a largely unregulated one." Id. at 525, 246 S.E.2d at 757.
Simply put, Duke Energy has been granted an exclusive right to provide electricity in return for compensation within its designated territory and with that right comes the obligation to serve all customers at rates and service requirements established by the Commission. NC WARN desires to serve customers of its own choosing within Duke Energy's territory at whatever rates and service requirements it sets for itself without oversight. Although NC WARN at the present date is only providing its services to a small number of organizations in the Greensboro area, if it were allowed to generate and sell electricity to cherry-picked non-profit organizations throughout the area or state, that *619 activity stands to upset the balance of the marketplace. Specifically, such a stamp of approval by this Court would open the door for other organizations like NC WARN to offer similar arrangements to other classes of the public, including large commercial establishments, which would jeopardize regulation of the industry itself.[4]
ii. Legislative Intent
Under Simpson , our analysis of whether an entity is selling energy to the "public" ultimately hinges on the query: what accomplishes the legislature's purpose and comports with public policy? Simpson, 295 N.C. at 524, 246 S.E.2d at 756-57 (citation omitted). Chapter 62 of the North Carolina General Statutes contains the Public Utilities Act, which establishes a comprehensive set of regulations for public utilities in the state. The "Declaration of policy" proclaims, inter alia , that "[i]t is hereby declared to be the policy of the State of North Carolina: ... (2) To promote the inherent advantage of regulated public utilities[.]" N.C.G.S. § 62-2(a)(2) (2015). Doing so allows for the "availability of an adequate and reliable supply of electric power ... to the people, economy and government of North Carolina[.]" Id. § 62-2(b). In that way, the declaration clearly reflects the policy adopted by the legislature that a regulated monopoly best serves the public, as opposed to competing suppliers of utility services. Carolina Tel. & Tel. Co. , 267 N.C. at 271, 148 S.E.2d at 111.
It is also true that the General Assembly has recently declared that it is also the policy of this state "[t]o promote the development of renewable energy and energy efficiency." N.C.G.S. § 62-2(a)(10) ; see also N.C.G.S. § 105-277 (2015) (exempting from taxation solar systems used to heat a property). However, *717 statutory pronouncements of policy are meant to coexist with North Carolina's well-established ban on third-party sales of electricity rather than supersede it until such time as the monopoly model is abandoned by our legislature. See Taylor v. City of Lenoir , 129 N.C. App. 174, 178, 497 S.E.2d 715, 719 (1998) ("[S]tatutes relating to the same subject or having the same general purpose, are to be read together, as constituting one law ... such that equal dignity and importance will be given to each." (citation and internal quotation marks omitted)). *620 If the legislature desires to except these types of third-party sales, it is within its province to do so and it is not for this Court to determine the advisability of any change in the law now declared in the Public Utilities Act. See State ex rel. Utils. Comm'n v. Lumbee River Elec. Membership Corp. , 275 N.C. 250, 257, 166 S.E.2d 663, 668 (1969) ("It is for the Legislature, not for this Court or the Utilities Commission, to determine whether the policy of free competition between suppliers of electric power or the policy of territorial monopoly or an intermediate policy is in the public interest.").
Conclusion
We hold, therefore, that NC WARN is operating as a public utility within the meaning of N.C.G.S. § 62-3. Consequently, NC WARN is subject to regulation by the Commission. Accordingly, we affirm the order of the Commission from which NC WARN appealed.
AFFIRMED.
Judge STROUD concurs.
Judge DILLON dissents by a separate opinion.

The Commission also provided that all penalties imposed "shall be waived upon NC WARN's honoring its commitment to refund all billings to the Church and ceasing all future sales."

Even though NC WARN is only offering its services to a subset of the population, it has offered to provide all of the energy produced by the solar system located on the Church's roof to the Church itself, and in this way NC WARN has shown itself to be willing to serve the Church up to the full capacity of NC WARN's facility-in this case up to the full capacity of the solar system at issue. Moreover, the Agreement provides that "any electricity generated by the system, for example, during times of low on-site usage, will be put onto the power grid and credited against the kilowatt (kWh) sold to [the Church] by Duke Energy." The transfer of energy produced by the solar system to the energy grid for unrestricted use by any and all of Duke Energy's Greensboro customers leads us to conclude that NC WARN is in fact "hold[ing itself] out as willing to serve all who apply up to the capacity of [its] facilities." Id. at 522, 246 S.E.2d at 755.

In its request for declaratory judgment, NC WARN acknowledges its intent to expand this program in stating, "An adverse ruling by the Commission would restrict NC WARN's ability to enter into similar funding mechanisms through [Power Purchase Agreements] with other churches and non-profits, as funds become available." {R. p. 9}

The Dissent notes that within the last decade the Commission concluded in two separate cases that "similar" arrangements by third-party solar services providers did not turn those providers into public utilities. However, those cases are not before us now, nor are "past decisions of a previous panel of the North Carolina Utilities Commission ... binding on later panels of the Commission or this Court." Utils. Comm'n v. Carolina Water Serv., Inc. of N.C. , 225 N.C. App. 120, 131 n. 6, 738 S.E.2d 187, 194 n. 6 (2013). Accordingly, they have no bearing on the present appeal.